# Richmond.

## Swift & Company v. City of Newport News.

### March 1, 1906.

1. MUNICIPAL CORPORATIONS—*Streets—Change of Grade—Damaging Private Property.*—At common law municipal corporations were not liable to one whose land was not taken for consequential damages arising from the change of grade of a street, although his improvements had been made on his lot in conformity to a former grade, and such was the law in this State prior to July 10, 1902, when the present Constitution was proclaimed. Since that date it is unlawful to damage private property for a public use without just compensation, just as it was unlawful theretofore to take private property for a public use without just compensation.

2. EMINENT DOMAIN—*Damage to Property—Constitutional Provision—How Enforced.*—The provision of the present Constitution which forbids damage to private property for a public use without just compensation is self-executing, and, there being no statute providing a remedy for the recovery of such compensation, the appropriate common law action may be brought therefor.

3. EMINENT DOMAIN—*Damage to Property—Constitutional Provision—Effect on Statutes.*—Upon the adoption of a Constitution forbidding the damaging of private property for a public use without just compensation, all existing statutes inconsistent with the Constitution are thereby nullified, and subsequent inconsistent statutes are forbidden.

4. EMINENT DOMAIN—*Damage to Property—Constitutional Provision—Prior Enactments—Subsequent Taking.*—The constitutional inhibition upon taking or damaging private property for a public use without just compensation applies to the time of the actual taking or damaging, not to a mere paper taking or damaging. The fact that an ordinance of a city council directing a change in the grade of a street which damages the property of an adjacent land owner was adopted prior to the proclamation of the Constitution can have

no effect if the actual damage was done after such proclamation. It is the actual taking or damaging which the Constitution protects, and for which an action will lie.

5. MUNICIPAL CORPORATIONS—*Changing Grade of Streets—Effect of Constitutional Provision—Damages—Right to Nominal Damages.*—The new Constitution (1902) has not taken from the cities of the State the right to raise or lower the surface of a street when necessity requires, nor made it dependent upon the will of the parties affected thereby, but only provides that just compensation shall be made for the damage done. Hence, if no damages have been done, no right has been violated, even though the established grade of the street may have been changed. The gist of an action brought under the Constitutional provision against "taking or damaging" is not to establish a legal right, but to recover just compensation, substantial damages. Hence, there can be no recovery of nominal damages as such.

6. EMINENT DOMAIN—*Property Damaged but not Taken—Measure of Damages—Adjusting Property to Improvement.*—Where private property has been simply damaged by a public improvement, but no part thereof has been taken, the measure of damages is the diminution in the value of the property by reason of the improvement—difference between the fair market value of the property immediately before and after the construction of the public improvement. The cost of adjusting the property to the improvement, as, for example, the cost of laying a new sidewalk, is a proper element to be taken into consideration in determining whether the property has been depreciated in value or not, but is not to be considered and assessed separately, independent of the enhanced value of the property by reason of the improvement.

7. EMINENT DOMAIN—*Damage to Property—Expert Testimony.*—Experts may give their opinions as to whether a particular piece of private property has been enhanced or depreciated in value by reason of a public improvement.

Error to a judgment of the Corporation Court of the city of Newport News, in an action of trespass on the case. Judgment for the plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.   The instructions given by the trial court were as follows:

"A.   The court instructs the jury that in determining from the evidence whether or not the plaintiff has been damaged by the change of grade occasioned by the public improvement made in 23d street in front of the property they will take into con-sideration the benefits, if any, derived therefrom as a whole, .and likewise the damages, if any, to the said property, as a whole and not to any specific part thereof; and if they believe from all of the evidence that the market value of the said property was as much immediately after the grade in the street had been so changed, as it was immediately before, not knowing it was to be so changed, then they will find for the defendant."

"B.   The court instructs the jury that if they believe from the evidence that the raising of the grade of 23d street was occasioned by the city's paving at its own expense the said street in front of the plaintiff's property, and that such improvement of the street did not reduce the market value of said property, you will find for the defendant.   By street is meant 'drive-way' not 'sidewalk.' "

"1.   If the jury believe from the evidence that, at some time after 12 o'clock M. of July 10, 1902, and prior to the institu-tion of this action, the defendant city of Newport News changed, or caused to be changed, the grade of 23d street in front of the premises of the plaintiff, Swift and Company, and raised the surface and grade of said street about seven inches above the surface and grade as it had theretofore existed, thereby leaving the lot of the plaintiff, and the building thereon, which had been built with reference to the original grade, below grade, and so damaged the property of the plaintiff, they must find for the plaintiff."

*Bickford & Stuart,* for the plaintiff in error.

*J. A. Massie,* for the defendant in error.

Cardwell, J., delivered the opinion of the court.

This action was brought in the Corporation Court of the city of Newport News by Swift & Co., a private corporation, to recover of the said city damages alleged to have been sustained in consequence of a change in the grade of a street.

The plaintiff is the owner of two lots, with a frontage of fifty feet, on Twenty-third street, between Washington and Huntington avenues in said city, upon which is a costly building used by the plaintiff in the conduct of a wholesale beef and cold storage business, with a branch depot for the distribution of its beef to purchasers. In this building there is a basement with windows, around which are light shafts which extend into the sidewalk, which basement is used for the operation of an electric motor and other machinery. The building was erected with reference to the then existing grade of Twenty-third street, and in front of same was laid a granolithic sidewalk. The defendant city determined to pave this street entirely at its own expense, and, in order to do so, found it necessary to make a slight change in the grade in front of plaintiff's property, and to raise the surface of the street between four and seven inches. This change of the grade of the street was made, and a contract for paving the street in accordance with the new grade was let prior to the taking effect of the new Constitution of the State, at 12 M., July 10, 1902, and work was begun under the contract on other parts of the street; but the contractors did not reach the point in front of plaintiff's property until shortly after the new Constitution took effect. In front of plaintiff's

premises the city put in what is known as a low or "drive-over" curb, which does not extend above the pavement, but the street when completed was several inches higher than the sidewalk theretofore constructed by the plaintiff, and thereupon it proceeded to construct another sidewalk, which is fifteen feet in width, bringing it up to the surface of the pavement, at a cost of $128.00.

The declaration filed sets out the foregoing acts on the part of the defendant city as wrongful and unlawful, and alleges injury and damage to the plaintiff's property, and depreciation of its market and rental value to the amount of $400.00.

Its demurrer to the declaration having been overruled, the city filed its plea of not guilty, and upon the issue joined on this plea the verdict and judgment were for the defendant.

We are asked to review and reverse this judgment because of misdirection of the jury in the giving and refusal of instructions, and because the verdict is contrary to the law and the evidence.

At common law, as has been repeatedly held by this court, municipal corporations were not liable for consequential damages, arising from the change of grade of a street, to one whose land was not taken, although his improvements had been made on his lot in conformity to a former grade. *Harrisonburg* v. *Roller,* 97 Va. 582, 34 S. E. 523; *Home Building, &c., Co.* v. *Roanoke,* 91 Va. 52, 20 S. E. 895, 27 L. R. A. 551, and authorities cited.

It is also well settled that the common law remains in force in this State, except when changed by statute or the Constitution, which operate prospectively only, unless the words employed show clearly and expressly the intention that it should be otherwise. *Arey* v. *Lindsay,* 103 Va. 250, 48 S. E. 889; *Kesterson* v. *Hill,* 101 Va. 739, 45 S. E. 288; Cooley's Const. Lim. 97.

This action, therefore, can be maintained, if at all, only by reason of some right secured to plaintiff in error by a change of some provision or provisions of the old Constitution of the State found in the present Constitution, as it is not alleged that there has been any legislation, and in fact there has been none, on the subject of damages to private property by public improvements since the present Constitution went into effect. There was no taking of property, and the defendant in error had the power, both at common law and by section 29 of its charter (Acts 1895-'06, p. 80), to grade and improve streets without the payment of consequential damages.

The provision in the Bill of Rights, in the old Constitution (section 8, Article 1), that "all men, having sufficient evidence of permanent common interest with, and attachment to, the community have the right of suffrage and cannot be taxed, or deprived of their property for public uses, without their consent, or that of their representatives duly elected"  .  .  .  has been changed by adding in the corresponding section of the new Constitution (section 6), after the words "or deprived of," the words "or damaged in," so that the provision of the Bill of Rights contained in the present Constitution is that citizens of the State cannot be deprived of, or damaged in, their property for public uses, without their own consent, or that of their representatives duly elected, &c.

By the change made in section 14, Article 5, of the old Constitution, which contained the provision that the General Assembly should not enact any law whereby private property might be taken for public uses without just compensation, it is now provided (section 58, Article 4, new Constitution) that the General Assembly "shall not enact any law whereby private property shall be taken *or damaged* for public uses, without just compensation."

Constitutional provisions, in *pari materia,* like statutes, are to be construed together, and effect is to be given to the policy established by the Constitution. To that end, a fair interpretation is to be given to the language used, construing words in their common and ordinary acceptation, unless it clearly appears that they were intended to be used in some other sense. *Ry. Co.* v. *Clowers' Admr.,* 102 Va. 867, 47 S. E. 1003; *Funkhouser* v. *Spahr,* 102 Va. 306, 46 S. E. 378.

It clearly appears, we think, that it was the policy of the framers of the present Constitution, in adopting section 6 of Article 1, and section 58 of Article 4, worded in a similar way that the corresponding provisions in the old Constitution were worded, that it should be unlawful thereafter to *damage* private property for public use without just compensation, just as it was unlawful theretofore to *take* private property for public use without just compensation.

This change follows similar provisions in the Constitution of West Virginia, adopted in 1872, which were taken from the Constitution of the State of Illinois of 1870, except that the provision in the two last-named Constitutions is a positive statement that "private property shall not be taken or damaged for public use without just compensation."

It was the design of the amendment to our Constitution under consideration to remove an existing mischief, viz: the *damaging* of private property for public use without just compensation, and a constitutional provision should never be construed as dependent for its efficiency and operation upon legislative will. 6 A. & E. Ency. L. 913, and authorities cited. So that when the provision of a Constitution, as does ours, no less than the provision in the Constitutions of the States of West Virginia and Illinois, forbids damage to private property, and points out no remedy, and no statute affords one, for the invasion of the

right of property thus secured, the provision is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance. 6 A. & E. Ency. L. 913, and authorities cited in note. And all statutes existing when such a Constitution is adopted, or which might thereafter be passed, inconsistent with its provisions, are nullified by such constitutional prohibition, though legislation may nevertheless be desirable and valuable for the purpose of defining the right and aiding in its enforcement. Same authority just cited, and *Oakland Paving Co.* v. *Hilton,* 69 Cal. 479, 11 Pac. 3.

In *People* v. *McRoberts,* 62 Ill. 41, the contention was made that the provision of the Illinois Bill of Rights, inhibiting the taking of private property for public use was only prospective, and inoperative without legislative action; but the contrary view was taken, the opinion of the court saying: "The right of property thus intended to be secured cannot depend upon the mere will of the Legislature. The prime object of the Bill of Rights is to place the life, liberty, and property of the citizen beyond the control of legislation, and to prevent either legislatures or courts from any interference with or deprivation of the rights therein declared and guaranteed, except upon certain conditions. It would be the merest delusion to declare a subsisting right as essential to the acquisition and protection of property, and make its employment depend upon legislative will or judicial interpretation."

It is contended, however, by counsel for defendant in error here, that notwithstanding our Bill of Rights and Constitution provide that an individual cannot be damaged in his property for public use without either his consent or that of his representatives duly elected, and that where the necessary consent is obtained by means of the passage of an ordinance, the legisla-

ture (city council) *shall not* enact any law whereby private
property shall be taken *or damaged* for public use *without just
compensation,* the passage of such an ordinance, pursuant to
authority given in the city's charter, without making provision
for just compensation, *before* the time when the Constitution
became effective, is a sufficient and legal justification for doing
the work on the street upon which plaintiff in error's property
abuts and causing damage thereto without compensation *after*
the Constitution began to operate, and the constitutional pro-
visions relied on do not apply. In other words, that although
the ordinance under which the work is done, if enacted at this
time, would be unconstitutional, or at least could not be put
into operation by doing the work without providing for just
compensation, such an ordinance passed before the present Con-
stitution became operative, which was carried into effect *after*
by bringing the street to the grade established by it, and inflict-
ing damage upon plaintiff in error's property, is valid authority
for doing the work, because when it was passed it would have
been lawful to have performed the work without rendering com-
pensation.

To give a city ordinance, passed prior to July 10, 1902, the
effect here contended for, would, as it appears clear to us, make
the constitutional provisions we have under consideration mean-
ingless.

"A law cannot be enforced in a State, no matter when passed,
which contravenes the provisions of the Constitution of the
State." *State* v. *Maynard,* 14 Ill. 519.

The question as to the effect of a new constitutional provision
incorporating the word "damage" in the Constitution of Illinois
was passed upon by the United States Supreme Court in *Chicago*
v. *Taylor,* 125 U. S. 166, 31 L. Ed. 638, 8 Sup. Ct. 820, and
the opinion says: "Touching the provision in the Constitution

of 1870, the court (State court) said that the framers of that instrument evidently had in view the giving of greater security to private rights by giving relief in cases of hardship not covered by the preceding Constitution, and for that purpose extended the right to compensation to those whose property had been 'damaged' for public use; that the introduction of that word, so far from being superfluous or accidental, indicated a deliberate purpose to make a change in the organic law of the State, and abolish the old test of direct physical injury to the corpus or subject of the property affected. The new rule of civil conduct, introduced by the present Constitution, the court adjudged required compensation in all cases where it appeared 'there has been some physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property, in excess of that sustained by the public generally.' . . .

"The conclusion there reached was that, under this constitutional provision, a recovery may be had in all cases where private property has sustained a substantial damage by the making and using of an improvement that is public in its character; that it does not require that the damage shall be caused by a trespass, or an actual physical invasion of the owners of real estate, but if the construction and operation of a railroad or other improvement is the cause of the damage, though consequential, the party may recover. . . .

"Our attention has not been called to, nor are we aware of, any subsequent decision of the State court giving the Constitution of 1870 an interpretation differing from that indicated in *Rigney* v. *Chicago* (102 Ill. 64), and *Chicago, &c., Rd. Co.* v. *Ayers* (106 Ill. 511). We concur in that interpretation. The

use of the word 'damaged' in the clause providing compensation
to owners of private property, appropriated to public use, could
have been with no other intention than that expressed by the
State court. Such a change in the organic law of the State was
not meaningless. But it would be meaningless if it should be
adjudged that the Constitution of 1870 gave no additional or
greater security to private property, sought to be appropriated
to public use, than was guaranteed by the former Constitution."

We have been unable to find a case where it is held that where
an ordinance establishing a grade is passed prior to the adoption
of a constitution, affording protection against damage in such
cases, and no work of grading was done under the ordinance
until after the adoption of the Constitution, the plaintiff can-
not recover because the grade ordinance was passed before the
Constitution became effective. There are, however, a number
of cases to be found taking the opposite view, and among them
the following: *Ogden* v. *Philadelphia,* 143 Pa. St. 430, 22 Atl.
694; *O'Brien* v. *Philadelphia,* 150 Pa. St. 589, 24 Atl. 1047,
30 Am. St. 832; *Johnson* v. *Parkersburg,* 16 W. Va. 402, 27
Am. Rep. 779.

In the first-named case, the grade was established on the
city plan in 1871; the Constitution of Pennsylvania giving the
right of compensation for property damaged for public use was
adopted in 1874; and the opinion of the court, after stating
these facts, and that when the grade of the street was estab-
lished there was no right of action for consequential damages
to property owners, says: "But the Constitution of 1874
(article 16, section 8) gave a right to owners to have compen-
sation for property injured, as well as for property taken by
municipal or other corporations in the construction or enlarge-
ment of their works. The right of action which this section
gives is clearly for the actual establishment of the grade on

the lands.   The general rule is that the cause of action arises when the injury is complete, and this has been uniformly applied to the taking of property for public use, from the case of *Schuylkill Nav. Co.* v. *Thoburn,* 7 Serg. & R. 411, down to the present day, etc.  .  .  .  .    There is nothing in the constitutional provision which indicates an intent to depart from the general rule under which, in the present case, the cause of action could not arise until the actual cutting down of the ground in 1887."

In *Johnson* v. *Parkersburg, supra,* a case similar in all essential particulars to this, the grade of the street was adopted before the Constitution of West Virginia of 1872, and the work of grading was done after the adoption of the Constitution. *Held*:   Where a city in changing the grade of streets permanently injures private property, and thus infringes the explicit provision of the Bill of Rights that private property shall not be taken or damaged for public use without compensation, an action lies for the injury, although no statute has ever been enacted for the enforcement of this constitutional provision." The opinion in that case says:   "The private right of the individual was secure under the Constitution.   That part did execute itself.   It contained a positive inhibition on the part of the Legislature to pass any law by which private property could be taken or damaged for public use without compensation."

In the later case of *Blair* v. *Charleston,* 43 W. Va. 68, 26 S. E. 341, 35 L. R. A. 856, 64 Am. St. 837, it is held that "If a street be opened and used upon the natural surface as a grade line, and it is recognized and treated by the city or town as a public street, and owners of lots upon it build with reference to said natural grade line, and it is changed, the city or town is liable to lot owners for damages consequential upon the change of grade, though no grade of the street was ever adopted by the

municipality, under section 9, article 3 of the Constitution. Such natural grade thus became the established grade."

"It is not the making of the paper grade that inflicts the injury, but its application to the ground. It is the direct disturbance of a right which the owner had enjoyed in connection with his property that gives the right of action." See also *Jones* v. *Bangor,* 144 Pa. St. 430, 23 Atl. 252.

Upon this branch of the case at bar we are of opinion that, under the present Constitution, proper acts of the legislature (or ordinances of the city council) for the purpose of both obtaining the necessary consent and providing just compensation, are essential to the act of taking *or damaging* private property for public use, unless in fact the owner of the property taken *or damaged* himself consents that it be done, and waives compensation. In other words, that the provisions of the present Constitution against the taking or damaging of private property for public use, without just compensation, were self-executing, and repealed and displaced all existing laws inconsistent therewith; and that plainly the charter of defendant in error and the city ordinances, in so far as they authorized the change of the grade of streets, resulting in injury to the property of abutting lot owners, without providing just compensation for such injury, are inconsistent with said provisions of the new Constitution, and are to that extent repealed. Section 117 of article 8, new Constitution; 6 A. & E. Ency. L. 919.

The next question for consideration is: What is the true rule for the measure of damages in a case like this?

It is earnestly insisted by counsel for plaintiff in error that as defendant in error has violated the provisions of the new Constitution which gave plaintiff in error a right of action, it follows that it has suffered damage. In other words, as the action is brought to protect a right secured to the plaintiff in

error by the new Constitution, it is at least entitled to recover nominal damages.

If this contention could be maintained, there could never be a verdict for the defendant in such a case, and the great weight of authority is, therefore, against the contention. "The failure to give nominal damages, unless it be upon a matter which involves the settlement of a right other than the right to recover damages, is not a ground for reversal." *Briggs* v. *Cooke*, 99 Va. 273.

The new Constitution has not taken from the cities of the State the right to raise or lower the surface of a street when necessity requires, nor made it dependent upon the will of the parties affected thereby, but only provides that just compensation shall be made for the damage done. Therefore, if no damage has been done, no right has been violated, even though the established grade of the street may have been changed.

"It is only in cases where damages are not the gist, that is, in cases of forbidden conduct, that nominal damages can be recovered." Hale on Damages, p. 25, 8 A. & E. Ency. L. 551.

The action here is for just compensation. The gist of the action is for substantial damages, and not an invasion of a legal right. Therefore, under the pleadings, nominal damages, as such, are not recoverable.

In *Stewart* v. *Ohio River Ry. Co.*, 38 W. Va. 438, 18 S. E. 604, the declaration filed was similar to the one in this case, and the opinion says: "Under our view of the pleadings as already discussed, nominal damages, as such, were not recoverable, for the plaintiff did not sue for an invasion or infringement of a legal right, as for a trespass or a nuisance, but for just compensation for damages done to his property."

"Where the suit is for the 'just compensation' guaranteed by the Constitution, the measure of the damages is the depreciation

in the value of the property by the causes sued for." 2 Lewis Em. Domain, section 625. The same author, discussing the rule for measuring the damages of a plaintiff who has suffered loss by reason of a public improvement, in section 494, citing numerous cases, says: "The correct measure of damages in all such cases is undoubtedly the diminution in the value of the property by reason of the change. The owner should receive such an amount as will make him whole."

In *Stewart* v. *Ohio River Ry. Co., supra,* the opinion of the court in *Springer* v. *Chicago,* 135 Ill. 552, construing the Illinois Constitution, is quoted with approval as follows: "Where the action is brought to recover damages, where no part of the property is taken but merely damaged by a public improvement, the law is well settled that a recovery cannot be had unless the property claimed to be damaged has been depreciated in value by the construction of the public improvement. In other words, if the fair cash value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained and no recovery can be had." To the same effect is *Blair* v. *Charleston, supra; Chicago* v. *Taylor, supra.*

In *City Council* v. *Schrameck,* 96 Ga. 426, 23 S. E. 400, 51 Am. St. 146, the same contention was made that is made by plaintiff in error here, viz: That benefits deducted in measuring damages where no part of the property is taken, but merely damaged by a public improvement, must be, as in a case where a part of the property is taken and the action is to recover for damage to the residue, special and peculiar, and cannot include general benefits shared in common with other property in the neighborhood, and that the plaintiff was in any event entitled to recover the costs of adjusting his property to the new conditions brought about by the public improvement; but the court held

otherwise, and in accordance with the rule sanctioned in the authorities just adverted to, the opinion saying that evidence as to the necessity of filling in the lot and raising the buildings on the lot, with the probable costs of such work was admissible, not as furnishing a reason for the allowance of such costs as an independent item of special damage, but as a circumstance throwing light upon the general question of the diminution of market value.

It is insisted that the rule established for assessing the damages to the residue, where a part of a tract of land is *taken,* by the decisions of this court before our Constitution was changed by inserting the word "damaged," should be adhered to, and *Hickman* v. *Kansas City,* 120 Mo. 110, 25 S. W. 225, 23 L. R. A. 658, 41 Am. St. 684, is greatly relied on as supporting that view; but while the opinion in that case reaches the conclusion that the change in the Missouri Constitution, made in 1875, by inserting the word "damaged" and coupling it with the word "taken," secured to the property owner the right to compensation when his property is damaged, in the same terms as when it is actually invaded and taken, the later Missouri cases do not follow that view, but approve the rule for the measure of damages, where no part of the property of the plaintiff is taken, that was sanctioned in *Stewart* v. *Ohio R. Co.,* and other cases cited above, viz: "If the fair market value of the property is as much immediately after the construction of the improvement as it was before the improvement was made, no damage has been sustained and no recovery can be had."

The opinion by Gantt, P. J., in *Grover* v. *Cornet,* 135 Mo. 21, 35 S. W. 1143, citing, among other cases, *Markowitz* v. *Kansas City,* 125 Mo. 485, 28 S. W. 642, 46 Am. St. 498, says: "The measure of damages in such cases has been laid down time and again by this court. It is the difference in the market value

of the property before and after the grading, and caused solely by the grading."

The same view is taken in *Walters* v. *St. Louis,* 132 Mo. 1, 33 S. W. 441, citing a number of cases decided by that court after the change made in the Missouri Constitution by inserting the word "damaged" and coupling it with the word "taken," requiring that thereafter "just compensation" should be made for property "damaged" as theretofore had been made for property "taken."

It is, however, further insisted here, that the jury should have been instructed as follows: "If the jury find for the plaintiff, in estimating its damages, they should take into consideration the diminution in value, if any, of the said plaintiff's property caused by the change of the grade of the street, the peculiar benefits, if any, derived in respect to this particular property, not in common with the property of other persons along said street, and the actual damage, if any, incurred by the plaintiff in laying a new pavement in front of its premises; and if they find from the evidence that such diminution in value exceeds in value such peculiar benefits, such excess is to be added to the damage incurred in laying the new pavement; but if the damage by diminution in value of the premises falls short of such peculiar benefits, then the deficiency is not to be charged to the plaintiff, nor deducted from the amount to which the said plaintiff is entitled on account of damage incurred in laying the new pavement; provided that the damages shall not exceed the amount of $400.00 claimed in the declaration." In other words, that the jury should have been instructed that in estimating plaintiff in error's damages, they should disregard benefits, if any, to its property derived from the improvement "in common with the property of others along said street," and that they should in any event find for the plaintiff in error the

sum of $128.00, the cost incurred in laying the new pavement, regardless of any benefits.

This independent item of cost incurred in laying the new pavement tended to show damage, and was proper to be considered as such by the jury, yet they could not take separate items and award damages for them and add them together and say that is the damage suffered, nor could there be a recovery for any specific item of damage as such, but all of them were to be taken together as elements tending to show whether the property had been depreciated in value when considered in connection with the benefits. 2 Lewis Em. Domain, sec. 494; *City Council* v. *Schrameck, supra; Chambers* v. *South Chester* (Pa.), 21 Atl. 409.

In the last-named case the following charge to the jury was approved: "You may consider these several matters" (special items of alleged damages) "as elements in the cause, but you are not to award damages for the building of walls or the filling up of lots as special damages, or for the likelihood of injuring the building, etc. You are not to take up these separate items and award separate damages for them and add them together and say that is the damage suffered.˙ The law has given another rule for the measuring of damages, and that rule is, as before stated, and which I will now repeat. The law is this: You will consider the market value of the property before the change and unaffected by it, and its market value with the grade as affected by it. If the establishing of the new grade has added more value to the property than it has depreciated from it, the verdict should be for the defendant. If it has depreciated from the property more than it has added to it, the verdict should be for the plaintiff, and the measure of damages should be the difference between its value before and its value after."

The case of *Blair* v. *Charleston, supra,* is exactly in point as to the rule for measuring the damages in a case where there is no taking of any part of the property alleged to have been damaged by a public improvement; and, in an elaborate opinion by Brannon, J., citing all of the decisions of this court pertinent to the issue, it is held: "If property is enhanced in value by reason of a public improvement, as distinguished from the general benefits to the whole community at large, it is specially benefited and is to be assessed for the special benefits, notwithstanding every other piece of property upon or near the improvement may, to greater or less extent, be likewise specially benefited. In other words, it is not only such benefits as are special, or limited to the particular property, thereby excluding the consideration of such benefits as are common to other property similarly situated, but it is such benefits as that the particular property is by the improvement enhanced in value, that is, specially benefited, that are to be considered. If a piece of property is enhanced in value, its enhancement or, in other words, benefits to the property cannot be said to be common to any other piece of property specially enhanced in value, and it is thus specially benefited within itself, and irrespective of the benefit that may be conferred by the improvement upon other properties."

The opinion in that case also disposes of the contention made here that evidence of experts, *i. e.,* opinion evidence, is not admissible on the question, whether the property has been enhanced or depreciated in value by the public improvement, and holds that such evidence is admissible.

The rule sanctioned by the authorities we have referred to, and in fact universally recognized, it may be said, in all cases in which recovery was sought for damages where no part of the property is taken, but merely damaged, by a public improve-

ment, is in entire harmony with the rule adopted in a long line of cases holding that the damages to the residue of the tract was an amount equal to the difference in the market value of the residue at the time of the taking and its market value after the same had been so taken. If this were not the correct rule, and plaintiff in error's contention could be sustained, damages would be recoverable in every case where the owner of property along the line of a public improvement incurred expense in adjusting his property to the improvement, although his property had been enhanced in value beyond the expense incurred, not because his property has been depreciated in value by the improvement more than benefited, but merely because other property similarly situated had been more or less benefited. Such a result would not only be unjust and inequitable, but would greatly retard the making of such common and necessary public improvements as are here complained of, and many others of like character and importance.

There is no evidence in this case, whatever, of any benefits to the community at large by reason of the paving of Twenty-third street, upon which plaintiff in error's property assessed for taxation at $22,000, abuts, but the evidence was limited solely to the special benefits which enhanced the value of this particular property, both in fee simple and rental value, tending to show an increase in both respects greatly in excess of the damages claimed as having been sustained by reason of the change in the grade of the street; and it would seem clear that the only inference that could be drawn from the evidence was that the other property in the community, not fronting on this paved street, was not enhanced in value, as the evidence shows that the fact that the property fronted upon the paved street was the sole cause of the enhancement of its value.

The case is of the first impression in Virginia upon the question of the measure of damages caused by a change of the grade of a street, where no part of the property was taken, and we have considered and determined the principles of the case instead of discussing in detail the instructions given and refused at the trial, and deem it only necessary to say with reference to the instructions, that those given by the learned judge who pre- sided at the trial so clearly and concisely expounded the prin- ciples of law applicable to the case, and in accordance with the views expressed in this opinion, that the jury could not have been misled as to their duty in disposing of the questions sub- mitted to them.

Enough has been said of this evidence to warrant, in our opinion, the conclusion that the jury could not have rightly found any other verdict than they did find, and therefore the court below did not err in overruling plaintiff in error's motion for a new trial.

The judgment of the corporation court is affirmed.

*Affirmed.*