**Richmond.**

NELSON COUNTY V. LOVING (No. 1), AND NELSON COUNTY
V. LEA (No. 2).

November 20, 1919.

1. STREETS AND HIGHWAYS—*Change of Grade—Liability of County.*—
A county is liable to abutting landowners for consequential
damages arising from the change of grade of a public road
made since the Constitution of 1902 went into effect, it being
conceded that the work complained of was confined to the orig-
inal right of way for the road lawfully acquired, and that the
work was done by the county as authorized by law.

2. STREETS AND HIGHWAYS—*Change of Grade—Liability of County—
Constitutional Provision Self-Executing.*—The absence of legis-
lation on the subject does not affect the liability of a county
to the abutting owners for consequential damages arising from
change of grade of a public road, as section 58 of the Constitu-
tion of 1902 is self-executing.

3. COUNTIES—*State—Liability of State and County to be Sued—
Claims for Personal Injuries.*—A county being a political sub-
division of the State, occupies the same position with respect
to suits against it that the State does, and it cannot be sued
without the consent of the State. The State has consented to
the suing of counties on contracts, but not on causes of action,
or claims for damages for personal injuries.

4. COUNTIES—*State—Liability of State and County to be Sued—Suit
for Injury to Private Property—Damaged for Public Uses.*—
The State, by constitutional provision (section 58 of the Consti-
tution of 1902), and by the statutes which authorize counties
to be sued (section 802 of the Code of 1904) and claims to be
asserted against counties (section 834, subsec. 2 and sections
836, 838, 840, and 843 of the Code of 1904), by necessary im-
plication consented that the counties of the State might be sued
for injury to private property damaged by them for public
uses, in so far as the manner of doing or letting the work to
contract, etc., is concerned.

5. STREETS AND HIGHWAYS—*Change of Grade—Damage to Abutting
Owner—Remedy.*—Under Constitution of 1902, section 58, and
Code of 1904, sections 802 and 843, the State by necessary im-

plication consented that the counties of the State may be sued
to enforce the right of a landowner to damages to property dam-
aged by the change of grade of a public road, and the remedy
pursued by plaintiffs in the instant cases of presenting the
claims to the board of supervisors and by appeal to the circuit
court upon the disallowance of the claims by the board being
in accordance with subsection 2 of section 834, and sections 836,
838, 840, and 843 of the Code of 1904, was allowed by these
statutory provisions in lieu of the remedy by action against the
county for the damages in question.

6. CONSTITUTIONAL LAW—*Damage to Private Property for Public
Uses—Remedy—Waiver of Tort and Suit on Implied Contract.*
—But for subsection 2 of section 834 and sections 836, 838, 840,
and 843 of the Code of 1904, which affords an adequate remedy
for the recovery of claims against the counties, either an ac-
tion of *indebitatus assumpsit* would lie on the *quasi* contract
implied in law from the obligation imposed on the defendant
county by the constitution to make "just compensation," for
private property taken or damaged for public uses, or an action
of trespass on the case would lie. While the cause of action
is a tort, the plaintiff may waive the tort and sue on the con-
tract which the law implies. In either case the procedure by
presentation of an account before the board of supervisors, etc.,
as set forth in the preceding syllabus, is permitted in lieu of
either of these forms of action.

7. INSTRUCTIONS—*Repetition.*—It is not error for the trial court to
refuse to give instructions which merely elaborate a proposition
of law contained in other instructions in the case.

8. INSTRUCTIONS—*Repetition.*—If a party litigant had a right, in
addition to having the jury instructed on his theory of the case,
to require that other instructions be given to the effect that this
state of facts, or that, or the other, does not present a case
which falls within the theory of the instructions given, there
would be no end to the instructions to which a litigant would be
entitled. Such a practice of needless multiplication of instruc-
tions has been often condemned by the Supreme Court of Ap-
peals.

9. STREETS AND HIGHWAYS—*Damages from Change of Grade—
Measure of Damages.*—In an action against a county for dam-
ages to adjoining property by the change of grade in a public
road, where the gravamen of the action or complaint is not
damage suffered in the use and occupation of the property, but
of damage to the realty itself, injury to the market value of the
property, when due consideration has been given to benefits con-
ferred, is the true measure of damages.

10. STREETS AND HIGHWAYS—*Damages by Change of Grade to Abutting Owner—Consideration of General and Special Benefits to the Landowner.*—Much may be said in favor of the rule to the effect that the true measure of damages to abutting real estate by the change of grade of a street is the difference between the market value of the property immediately before and. its market value immediately after the street improvement, less any special or peculiar benefits to the property due to the improvement, but leaving out of consideration such general benefits as accrue to it in common with other property similarly situated, as well as all other general benefits due to the improvements which will be'enjoyed by the community in general, and it may be that upon further consideration the rule laid down in *Swift & Co.* v. *Newport News,·* 105 Va., pp. 126, 127, 52 S. E. 821, 3 L. R. A. (N. S.) 404, may be modified to some extent. But whether this should or should not be done was not a question presented for the determination of the Supreme Court of Appeals in the instant cases.

11. APPEAL AND ERROR—*Instructions—Invited Error.*—A party having asked for an instruction and obtained it, cannot be heard to complain that it is more favorable to it than it should have been.

12. STREETS AND HIGHWAYS—*Change of Grade—Damages to Abutting Owner—Instructions.*—In an action for damages by a landowner from change of grade in a public road, an instruction was erroneous which might have been construed by the jury as forbidding them to take into consideration the inconvenience to the landowner caused by the change, although such inconvenience was a special injury which might and naturally would affect the market value of the property.

13. STREETS AND HIGHWAYS—*Change of Grade—Damages to Abutting Owner—Erection of Steps and Retaining Walls.*—In an action by a landowner for damages caused by a change of grade, in determining damages the jury had the right to take into consideration the cost of erecting the steps and retaining walls, not as separate items of damages, but as elements taken together with such other elements of damage as tended to show whether the property had been depreciated in market value.

14. APPEAL AND ERROR—*Theory of Case.*—Where a case is tried throughout in the court below and presented in the Supreme Court of Appeals upon the assumption of a certain fact, that assumption must be taken as a concluded fact in the case.

Error to a judgment of the Circuit Court of Nelson county in proceedings on claims against Nelson county for

damages to claimants' land by the change of grade in a public road. Judgment for claimants. Defendant assigns error.

*Affirmed.*

In these cases the respective defendants in error (who were plaintiffs in the court below and will be hereinafter so designated) filed before the board of supervisors of the county of Nelson their respective claims against the county for damages for alleged injury done to real estate owned by them respectively, the real estate, as stated in their accounts, being "(damaged but not taken), by reason of the grading of the new macadam road through the village of Lovingston," the claim of such damages in each case being the sum of $1,000.

The board of supervisors disallowed these claims, and thereupon the plaintiffs appealed to the circuit court in accordance with the statute in such case made and provided.

In the circuit court there was a demurrer to such claims filed by Nelson county in both cases, in which the grounds of demurrer were stated in writing as follows:

"And for grounds of said demurrer the said defendant comes and says that the county of Nelson is a part of the State of Virginia, and that a State cannot be sued unless as allowed by law. And that suits of the character above are not allowed by law, and therefore the said suit should be dismissed."

The demurrer was overruled by the court below, and thereupon the county entered in each case the plea that it did "not owe the damages in the plaintiff's claim alleged," and upon that issue there was a trial by jury of the two cases, heard together, resulting in verdicts and judgments in favor of the plaintiffs for the sum of $575 in the first above entitled case and $835 in the second above entitled case.

It was shown in evidence that Lovingston is an unincorporated village, that the work of grading and constructing the macadam road aforesaid was done by Nelson county under the supervision of the State Highway Commission, acting under and in accordance with the general law of the State on that subject; that the grade of the macadam road aforesaid does not exceed seven per cent. which is the maximum allowed by law, but it is different from and cut down the old grade of the road an average of three feet in front of the property of the plaintiff, Loving, which is a hotel in Lovingston located on the side of said road, and four to four and one-half feet in the highest place in front of the storehouse of the plaintiffs, L. L. and W. B. Lea, but not so much at the back thereof—such store house being also located in Lovingston. on the side of such road; that there was no change of the location of said road in the locality in question except of its grade line; and that no part of the lots of the paintiffs was taken.

A considerable number of witnesses were examined both for the plaintiff and for the county. This testimony on both sides of the case is in the main directed to the question of what was the difference, if any, in the market value of the respective properties immediately before and immediately after such change of grade of the road; the difference in such market value being stated by most of the witnesses testifying on the subject as the amount of the damages to such properties estimated by them, respectively. These estimates, as is usual in such cases, varied widely. It is sufficient to say of them that many of the estimates of the witnesses for the plaintiffs much exceeded the amounts allowed by the verdicts of the jury aforesaid. There was some testimony for the plaintiffs to the effect that the respective properties were rendered more inconvenient of access by the lowering of the grade aforesaid

of the road along by the buildings thereon, necessitating the erection of retaining walls to hold the banks next to the road and of steps to enter the fronts of the respective buildings, the expense of such construction being stated by the most important witnesses for plaintiffs, and of a railing in front of the Lea store, as making up the larger part of their estimates of the depreciation in market value aforesaid, to which they added something in consideration of the inconvenience and risk of injury to persons going up and down the steps and the probable loss of custom at the store and hotel because of the disinclination of patrons to go in and out up and down the elevation from the road as newly graded, to and from the respective buildings, as compared with such exit and entrance to and from the road on its old grade—the latter having been on the same level with the front of the hotel of Loving and on a grade of eighteen inches above the front of the store of the Leas.

There is one difference between the above entitled cases which should be mentioned. In the first above entitled case the hotel building has been standing for many years, long antedating the change in grade line of the road aforesaid, having been built with a view to the old grade line of the road aforesaid. In the second above entitled case, the store building was constructed very recently, namely, in 1917-18, between the time of the surveying of the road preparatory to its change of grade and the time of the actual work of such change of grade; and the store building, which cost beeween $9,000 and $10,000, was erected by the Leas with reference to the grade line given them by the person in charge of the work for the county (the person's authority so to do not being questioned on the trial of the case in the court below so far as the record shows and not questioned in the assignments of error by the county before us), which was eighteen inches only below the

old grade of the road; whereas, after the store building was erected the county changed this grade line to the grade line finally used as aforesaid, which was from four to four and one-half feet below such old grade in the highest place in front, but not so much at the back of the store building as aforesaid.

The court below gave only two instructions to the jury, the first of which, copied below, was given at the instance of the plaintiffs in both cases, and the next of which, also copied below, was given at the instance of the defendant, the county of Nelson, in both cases.

Such instructions were as follows:

No 1. "The court instructs the jury, that if they believe from the evidence that the defendant changed or caused to be changed the grade of the streets or roadways in front and on the side of the plaintiff's property or either of them, leaving the lot of the plaintiffs and the building thereon (which had been built with reference to grade theretofore existing, or a grade given the plaintiffs by the engineer in charge of said work) up on a bank above the said streets or roads, and so damaged the property of the plaintiffs, they must find for each plaintiff such sum as they may be of opinion from the evidence such plaintiff is entitled to, not exceeding the sum of $1,000.00 to each of them."

No. 2. "The court instructs the jury that in determining from the evidence whether or not the plaintiffs have been damaged by the change on the grade occasioned by the public improvement made in the streets of the village of Lovingston, Nelson county, Va., adjacent to the property of the plaintiffs, they will take into consideration the benefits, if any, derived therefrom as a whole, and if they believe from the evidence that the market value of the said property was as much immediately after the grade in the said streets had been so changed, as it was immediately

37

before, not knowing it was to be so changed, that they should find for the defendant."

The defendant county, however, asked for the following instructions, all of which were refused by the court, namely:

Instruction "A". "The court instructs the jury that in consideration whether the plaintiff is entitled to any damages they cannot take separate items of cost and award damages for them, and add them together and say that is the damage suffered, nor can there be a recovery for any specific item of damage as such, but all of them are to be taken together as elements tending to show whether the property has been depreciated in value when considered in connection with the benefits.

'The law has given another rule for measuring damages, as follows, the market value of the property before the damage and unaffected by it, and its market value with the grade as affected by it."

Instruction "B". "The court instructs the jury that in suits for damages arising from the change of the grade in the streets of a village, that in considering whether or not the owners of adjacent properties, none of which was taken, have been injured thereby, they cannot take into consideration any personal inconvenience to the owners of said properties or any members of their families."

Instruction "C". "The court instructs the jury that in such cases as are referred to in instruction "B" they cannot take into consideration any inconveniences to the customers of the owners of said properties, or to any other persons, unless they shall believe from the evidence that such inconveniences affected the market value of said properties."

Instruction "D". "The court instructs the jury that the law does not, however, authorize a remedy for every dimi-

nution in the value of the property that is caused by a public improvement. The damage for which compensation is to be made is a damage to the property itself, and does not include a mere infringement of the owner's personal pleasure or enjoyment. Merely rendering private property less desirable for certain purposes or even causing personal annoyance or discomfort in its use, will not constitute the damage to property, contemplated by law; but the property itself must suffer some diminution in substance, or be rendered intrinsically less valuable, by reason of the public improvement.

"Therefore, if the jury shall believe from the evidence in these cases that although the plaintiffs' property may have been rendered less desirable for certain purposes, causing them personal annoyance and discomfort in its use, and rendered less accessible than prior to the improvement, but if you shall further believe from the evidence that the property itself has not suffered some diminution in substance or rendered intrinsically less valuable by reason of the public improvement, then you shall find for the defendant.

Instruction "E". "The court further instructs the jury that although you may believe from the evidence that the property itself of the plaintiffs. has been damaged by reason of the public improvements, yet in assessing such damages, if any, you shall not take into consideration or as an element thereof the cost of erecting the cement steps and retaining walls around the plaintiffs' property, if you shall further believe from the evidence that the land or ground upon which said proposed steps or walls is to be erected is the property of the defendant, Nelson county."

*S. B. Whitehead* and *Edward Meeks,* for the plaintiff in error.

*Caskie & Caskie* and *Wm. Kinckle Allen,* for the defendants in error.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

The questions presented for our decision by the assignments of error in the above entitled cases will be disposed of in their order as stated below:

[1] 1. Is the defendant county liable to the plaintiffs for consequential damages arising from the change of grade of the public road made since the present Constitution of the State went into effect (it being conceded that the work complained of was confined to the original right of way for the road lawfully acquired, and that the work was done by the county as authorized by law) ?

[2] Section 58 of the State Constitution provides, in effect, that no "private property shall be taken or damaged for public uses without just compensation." The prior Constitution of the State (Art. 5, sec. 14) contained the same provision as to the taking of private property for public uses, the words "or damaged" being inserted for the first time in the present constitution, which went into effect July 10, 1902.

The change of grade of the public road, and the consequential damages alleged to have been occasioned, occurred in 1918. There was then no provision of statute for the assessment of such damages by condemnation proceedings. See subsecs. 2 and 3, sec. 944-a, 3 Pollard's Code, 1910, as compared with sec. 2, Acts 1904, p. 191 (Code 1904, §944a). The absence of legislation on the subject does not, however, affect the question under consideration, for, as decided by this court in *Swift & Co.* v. *Newport News,* 105 Va. 108, at p. 115, 52 S. E. 821, 3 L. R. A. (N. S.) 404, section 58 aforesaid of the Constitution "is self-executing."

[3] It is also decided by the case last cited that a municipal corporation is liable for damages to private property occasioned by the change of grade of its streets. But it is urged in behalf of the defendant county that it has been for a long while firmly settled in this State that the counties of the Commonwealth stand upon a different footing with respect to liability for damages, and that, although it has been for some time settled that municipal corporations are liable in suits for damages, counties are not so liable if the cause of action arises from a tort. The position taken for the defendent county is, in substance, that the county, being a political subdivision of the State, occupies the same position with respect to suits against it that the State does, and that it cannot be sued without the consent of the State. That the State has consented to the suing of counties "on contracts" but not on causes of action "based on torts;" and 4 Minor's Inst., Pt. 1, p. 493, 15 C. J. 568; *Fry* v. *County of Albemarle,* 86 Va. 195, 9 S. E. 1004, 19 Am. St. Rep. 879; *Stuart* v. *Smith-Courtney Co.,* 123 Va. 231, 96 S. E. 241, are cited to sustain such position. This position is well taken so far as suits or claims for damages for personal injuries are concerned. Touching the damages claimed in the cases before us, however, it only presents the question we have under consideration in another form, and that is this:

[4] 2. Has the State, by the constitutional provision aforesaid (sec. 58 of the Constitution), and by the statutes which authorize counties to be sued (sec. 802 of the Code) and claims to be asserted against counties (sec. 834, subsec. 2, and secs. 836, 838, 840 and 843 of the Code), by necessary implication consented that the counties of the State may be sued for injury to private property "damaged" by them "for public uses?"

In the case of *County of Chester* v. *Brewer,* 117 Pa. 647 12 Atl. 577, 2 Am. St. Rep. 713, the provision of the Con-

stitution of Pennsylvania under construction was as follows: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements * * *" The court said that the provision of the Constitution quoted "* * * was intended to embrace every corporation and individual in the State clothed with the power of taking private property for public use. It is true counties do not possess this power in its general or enlarged sense; yet it is equally clear that they do possess it to a limited extent in the matter of opening roads and constructing bridges. We need not elaborate so plain a proposition." And the court held the county liable for consequential damages caused by the erection of the abutments of a bridge some fourteen feet above the grade of the street in front of plaintiff's house although there was no statute on the subject supplementing the constitutional provision aforesaid.

See to the same effect *Dallas County* v. *Dillard*, 156 Ala. 354, 47 So. 135, 18 L. R. A. (N. S.) 884, where a constitutional provision in the same language as that of the Pennsylvania Constitution above quoted was involved, and where the county was held liable for consequential damages to abutting property due to a change of grade of a public road. And in that case also there was no statute on the subject supplementing the constitutional provision under consideration.

In *Layman* v. *Beeler*, 113 Ky. 221, 67 S. W. 995, the constitutional provision involved was as follows: "Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or de-

stroyed by them * * *" The consequential damages claimed by the plaintiff were due to the change of grade of a public road abutting upon which the plaintiff's property was located. The county defended on the ground "that the county was not liable to an action for tort;" and the court said: "This, as a general proposition, is true, and there is no liability upon the part of the county unless it be authorized expressly or by necessary implication of statute." Citing a Kentucky case. "The question is, was there such an authorization in the case at bar?" The court thereupon quotes the constitutional provision last above quoted and holds, in effect, that such constitutional provision imposed a liability for the damages and by necessary implication authorized the suit.

It seems to us that the provision of section 58 of the Virginia Constitution is more plainly universal in its intendment of application, as evidenced by the language employed, than is true of the constitutional language construed in the three cases next above mentioned. There the Constitutions in question descended into the express designation of "corporations" as well as "individuals" as being liable to make the compensation in question. The Virginia Constitution is not obscured in its meaning by any need of considering whether counties are included in any particular classes which are designated. The very language employed at once announces that it is not any particular classes of individuals or corporations against which the constitutional provision is directed, but that it is adopted as a guaranty in favor of all private property by whatsoever instrumentality taken "or damaged" for public uses. And the same is true of the constitutional provisions involved in the cases to which we shall now refer.

In *Tyler* v. *Tehama County*. 109 Cal. 618, 42 Pac. 240, the later constitutional provision in question was as fol-

lows: "* * * private property shall not be taken or damaged
for public use without just compensation having been first
made or paid into court for the owner." The preceding
Constitution of that State contained the same provision
as to the *taking* only of private property, the words "or
damaged" being added to the later Constitution under
which the case arose. The court held the county liable for
consequential damages to plaintiff's adjacent property due
to the construction of the abutments of a bridge as author-
ized by the board of supervisors of the county not located
along the line of the public road, being on the land of the
plaintiff abutting upon the road, but accepted and retained
by the county after its completion. The court said: "As-
suming for the present that the acts of the board of su-
pervisors were authorized and lawful, the first question
to be determined, then, is whether the county is liable for
the consequential injuries caused by the construction of
the bridge * * * It is undoubtedly true that at common law
an action does not lie against a county, and that in the
absence of some constitutional or statutory provision, coun-
ties are to be treated as political divisions of the State,
created for convenience and not liable for damages caused
by the neglect of their officers or agents." Citing *Crowell
v. Sonoma Co.*, 25 Cal. 313, decided prior to the later Con-
stitution. The court then quotes the provisions of the
former and also of the later Constitution and discusses a
number of decisions, some of that State and some of other
jurisdictions, all however against municipal or private cor-
porations. The opinion then proceeds as follows: "I think
the injuries here complained of are clearly within the con-
stitutional provision above cited" (that of the later Con-
stitution) "as construed in the cases above cited; and if so
I see no reason why the plaintiff's damages may not be re-
covered from the county, since the statute expressly author-

izes counties to sue and be sued. All the California cases cited by counsel for respondent, except *Crowell* v. *Sonoma Co.*, were for personal injuries; and counsel contends that the same principles apply in cases of injury to property, and that, therefore, upon the authority of the cases cited, the county is not liable. It was so said in *Crowell* v. *Sonoma Co.*, and under the old Constitution that was doubtless true; but the change in the Constitution, in the respect we have discussed" (the addition of the words "or damaged"), "creates a closer distinction between damages to property and damages for personal injuries."

The court in the case last cited held that such case fell within the same principle as if the bridge had been constructed on the line of and within the right of way of the public road as previously established, because of the fact that the bridge was accepted by the board of supervisors after its completion, notwithstanding its location aforesaid.

Concerning the absence in the statute law of any express provision giving a remedy to one whose property is damaged for public use without compensation, and referring to the amendment of the former Constitution by the addition of the words "or damaged" included in section 58 aforesaid of the present Constitution of Virginia, the following is said in *Swift & Co.* v. *Newport News, supra,* 105 Va. at pp. 114-115, 52 S. E. 821, 824 (3 L. R. A. [N. S.] 404) : "It was the design of the amendment of our Constitution under consideration to remove an existing mischief, viz: the damaging of private property for public use without just compensation, and a constitutional provision should never be construed as dependent for its efficiency and operation upon legislative will. 6 A. & E. Ency. L. 913, and authorities cited. So that when the provision of a Constitution, as ours does * * * forbids damage to

38

private property and points out no remedy, and no statute affords one for the invasion of the right of property thus secured, the provision is self-executing, and the common law, which provides a remedy for every wrong, will furnish the appropriate action for the redress of such grievance. 6 A. & E. Ency. L. 913, and authorities cited in note."

We are of opinion, therefore, that the provision of section 58 of our Constitution aforesaid has expressly conferred upon all private owners of property the right to "just compensation" upon its being "damaged" for public use by the action of the counties under the various statutes authorizing such action in so far as the manner of doing or letting the work to contract, etc., is concerned.

[5] As to the remedy: The counties are made bodies corporate by statute in Virginia and may sue and be sued as provided by such statute law. Section 802, Code. It is significant that such section of the Code specifies what character of suits counties may bring in their own names, namely, "for forfeitures, fines or penalties given by law to such counties, or upon contracts made with them;" but places no restriction on the character of suits which may be brought against them, merely providing that such right of suit is subject to the provisions of section 843 of the Code. That section, in substance, is to the effect that if a claim is presented to the board of supervisors of any county and disallowed in whole or in part, there shall be no further proceedings in assertion of the claim against the county, unless by appeal from such decision. The claims, in the cases before us, were presented to the board of supervisors of the defendant county, disallowed, and appeals were taken to the court below, as set forth in the statement preceding this opinion. We are of opinion, therefore, that by said constitutional and statute law the State has by necessary implication consented that the coun-

ties of the State may be sued to enforce the right aforesaid conferred by the Constitution; and that the remedy pursued by the plaintiffs of presenting the claims to the board of supervisors and by appeal upon the disallowance of the claims by such board, as set forth in the statement preceding this opinion, being in accordance with subsection 2 of section 834, and sections 836, 838, 840 and 843 of the Code, was allowed by such statute law in lieu of the remedy by action against the county for the damages in question.

[6] Such being our conclusion, it might be considered as immaterial whether the right of action or procedure of the plaintiffs be regarded as "on contract" or "in tort," but as the assignments of error present that question for our decision, as that question has been fully argued before us, and as its decision may be of practical importance in removing future controversy over this question of proce-· dure in like cases which may hereafter arise, we feel that we should announce our opinion thereon, and it is this: We are of opinion that but for the statute law aforesaid, which affords an adequate remedy for the recovery of claims against the counties, either an action of *indebitatus assumpsit* would lie on the *quasi* contract implied in law from the obligation imposed on the defendant county by the constitution to make "just compensation" in the premises (Clark on Contracts, 1894 ed. sec. 311, pp. 752-755, sec. 13, p. 756; 13 C. J. 244-5), or an action of trespass on the case would lie (*Swift & Co.* v. *Newport News*, *supra*, 105 Va. at p. 115, 52 S. E. 821, 3 L. R. A. [N. S.] 404). Accurately speaking, the cause of action in each of the cases before us arose from the disturbance or violation of the plaintiff's right which the law created as aforesaid, which is a tort (26 A. & E. Ency. L. 1st ed. p. 72); but in such case a plaintiff, under the well settled rule on the subject, may waive the tort and sue in *assumpsit* on the

contract which the law implies. *Nelson County* v. *Coleman,* 126 Va. 275, 101 S. E. 413; this day decided; Burks' Pl. & Pr., sec. 85, p. 121, *et seq.* In either case the procedure by presentation of an account before the board of supervisors, etc., in pursuance of the aforesaid statute law on that subject, is thereby permitted in lieu of either of the forms of action aforesaid.

We come now to the questions presented to us for decision arising upon the giving and refusal of instructions. These instructions appear in the statement preceding this opinion.

3. The objection of the defendant county to the instruction No. 1, given at the instance of the plaintiffs, is merely the same as that which has been above considered and disposed of, namely, in substance, that the county could not be sued in cases of the character of those before us.

4. The defendant county complains of the refusal of the trial court to give instructions A, B, C, D, and E.

[7, 8] An examination of these instructions discloses that they all merely elaborate the proposition of law that in these cases the sole measure of damages which the jury could consider was the difference, if any, between the market value of the property "immediately after" the grade had been changed, as compared with such value "immediately before" such change. This statement of the law was given to the jury by instruction No. 2, which was granted at the instance of the defendant county; and the jury were thereby told that if they believed from the evidence that no such difference in market value existed they should find for the defendant. That comprehended all and more than all of the situations stated in detail in the several instructions which were asked and refused as aforesaid. This single consideration is sufficient to demonstrate that the trial court committed no error in refusing the instructions under cnsideration. If a party litigant had a right, in

addition to having the jury instructed on his theory of
the case to require that other instructions be given to
the effect that this state of facts, or the other, does
not present a case which falls within the theory of
the instructions given, there would be no end to the in-
structions to which a litigant would be entitled. Such a
practice of needless multiplication of instructions has been
often condemned by this court.

[9] We may add that these not being cases where the
gravemen of the action or complaint is damage suffered in
the use and occupation of the property (*Virginia R. Co.* v.
*London,* 114 Va. 334, 344, 76 S. E. 306), but of damage
to the realty itself, injury to the market value of the prop-
erty, when due consideration has been given to benefits
conferred, is the true measure of damages, and if instruc-
tion No. 2 had not been asked for or given, it would have
been entirely proper for the court, in the absence of any
issue as to what benefits should and what benefits should
not be considered, to have given instructions A, C, and D
in lieu of such an instruction as No. 2. For the court
would thereby, in effect, although in a circuitous way,
have given the jury the same statement of the law which
is more tersely stated in instruction No. 2. But No. 2 in-
struction having been given, A, C, and D instructions be-
came superfluous.

[10, 11] Whether instruction No. 2 was too favorable
to the defendant county and was not as favorable to the
plaintiffs as it should have been, is another question; for
under that instruction the jury were at liberty to charge
the plaintiffs with all general benefits due to the improved
road which the community in general will enjoy in com-
mon with the plaintiffs, and if these were found by the jury
to enhance the market value of the property of the plain-
tiffs more than the special injury to it of cutting down the
grade of the road necessitating walls and steps to be con-

structed and the use of such steps for entrance to and exit from the property, the jury were authorized to allow nothing to the plaintiffs to compensate them for such special injury. This, according to many authorities, would not give to the plaintiffs that "just compensation" for the damage to the property to which the Constitution entitled them; because it would be in effect paying off the special damages with general benefits which the plaintiffs have the right, in the view taken by such authorities, to enjoy in common with the rest of the community, unpenalized. And while it is true that instruction No. 2 may be said to be in accord with much that is said in the opinion of this court in the *Swift & Co. Case, supra,* it is not wholly in accord therewith, since that case on this point decides merely that benefits to abutting land of a plaintiff, due to the improvement, are not general benefits merely because the same benefits are enjoyed by the lands of others abutting on the improved street, but are in truth special benefits. See *Swift & Co.* v. *Newport News, supra,* 105 Va. at pp. 126-7, 52 S. E. 821, 3 L. R. A. (N. S.) 404. And such case would seem itself to concede that there are general benefits in such cases which should be excluded from consideration in diminution of the damages, so that it may be said that instruction No. 2 is broader and less guarded with limitations than is warranted by the *Swift & Co. Case* itself.

.It may be difficult, if not impossible, to find a satisfactory distinction in principle between benefits due to street or road improvements which are conferred on abutting land and benefits conferred on land very near by but not actually abutting on the street or road which is improved. And the rule laid down in the *Swift & Co. Case* may lead in principle to the conclusion that all benefits which are conferred on the land by the improvement of a street or public road should be taken into consideration in ascer-

taining whether the land has been damaged by the public improvement, but if so, this would seem to be a conclusion at variance with the earlier views expressed by this court on that subject (*James R. & Kanawha Co.* v. *Turner*, 9 Leigh (36 Va.) 313, and note to 50 Va. Rep. Ann. [10 Gratt.] 13), and with the holding in the great majority of the States—only seven or perhaps eight of the States having adopted such conclusion. 2 Lewis on Em. Dom., secs. 687-692. But this court has not yet, as aforesaid, gone so far in its holding.

Much, indeed, may be said in favor of the rule established in West Virginia, to the effect that the true measure of damages to abutting real estate by the change of grade of a street is the difference between the market value of the property immediately before and its market value immediately after the street improvement, less any special or peculiar benefits to the property due to the improvement, but leaving out of consideration such general benefits as accrue to it in common with other property similarly situated, as well as all other general benefits due to the improvement which will be enjoyed by the community in general. *Rutherford* v. *Williamson,* 70 W. Va. 402, 74 S. E. 682; *Harman* v. *Bluefield,* 70 W. Va. 129, 73 S. E. 296; 10 Am. & Eng. Ency. L. (2d ed.), p. 1177. And it may be that upon further consideration the rule laid down in *Swift & Co.* v. *Newport News* might be modified to some extent. But whether this should or should not be done is not a question presented for our determination in the cases before us. It is indeed urged before us by counsel for the plaintiffs that instruction No. 2, for the reasons above indicated, is more favorable to the defendant county than it should have been, but no cross-assignment of error is made, and we are not asked for plaintiffs to set aside the verdicts on that ground. And the defendant county having asked for this instruction and obtained it, cannot be heard to

complain that it is more favorable to it than it should have been.

[12] It should be further said that instruction B is misleading in its form as asked, since it might well have been construed by the jury as forbidding them to take into consideration the inconvenience mentioned, although such inconvenience was a special injury which may and naturally would have affected the market value of the property.

[13] Instruction E was erroneous because the jury had the right to take into consideration the cost of erecting the steps and retaining walls, not as separate items of damages, but as elements taken together with such other elements of damage as tended to show whether the property had been depreciated in market value. *Swift & Co.* v. *Newport News, supra.* And the fact, if it were a fact (of which there is no evidence in the record), that the county *owned* the land or ground upon which the proposed steps or walls were to be erected, did not of necessity render it impossible for the plaintiffs to make such improvements, since they may be able to obtain permission of the county therefor; and hence also the instruction was erroneous.

What is said above disposes of all the questions presented to us for decision in these cases and the result is that we shall affirm the judgments complained of.

In view of the importance of the subject, however, both to the counties of the State and to the owners of property who may be affected, we feel that we should add the following:

[14] There is no issue or evidence in the record before us bearing on the question of whether the county did or did not originally, or prior to its action in changing the grade of the road as aforesaid, so acquire the right of way for, or the land occupied by, the road, that the damages claimed by the plaintiffs due to the subsequent change of grade were shown to have been in fact or would be pre-

sumed to have been already paid by the county or that all demand therefor had been relinquished by the landowners. The cases were tried throughout in the court below, and have been presented to us by the petitions for writs of error and in the arguments before us, upon the assumption that the county did not so acquire the right of way for or the land occupied by the road as to bring about the resultant effect above mentioned. Hence, that assumption must be taken as a concluded fact in the cases in judgment. But we wish it to be understood that we leave the question just mentioned undecided by us at this time in so far as other cases which may arise may be affected thereby.

*Affirmed.*