# Rowan v. Commonwealth, Appellant.

*Practice, Supreme Court—Appeals—Assignments of errors—Defective assignments — Paper books — Statement of questions involved—Typewritten statement.*

1. On appeal from a judgment entered in a case tried by a judge without a jury, assignments of error complaining of findings of fact and conclusions of law of the court below are defective where they fail to show that exceptions were taken, or the action of the court thereon, and it is not material that exceptions to the findings were in fact filed and argued and finally overruled. Assignments of error are an essential part of the pleadings on appeal, and must be complete in themselves without reference to other parts of the record.

2. Where error is assigned to the findings and conclusions of the court below, the particular one to which exception is taken should be quoted, and the action of the court set forth, together with the exception, in order that the assignment shall show the complete transaction.

3. Where the statement of questions involved violates the rule of court as to length, it is not good practice to attempt to correct it by filing a typewritten statement.

*Eminent domain—Parks—Valley Forge—Condemnation of land —Damages—Measure of damages—Special use—Time from which damages computed—Acts of May 30, 1893, P. L. 183; March 19, 1903, P. L. 37; April 7, 1905, P. L. 117; June 23, 1917, P. L. 640.*

4. The Acts of May 30, 1893, P. L. 183, March 19, 1903, P. L. 37, April 7, 1905, P. L. 117, and June 23, 1917, P. L. 640, relating to the acquisition of Valley Forge as a public park did not define the limits of the park, but authorized the Commissioners to fix the locations and boundaries thereof; and a person who purchased property within the possible but undefined limits of the park after the passage of the acts relating thereto was not chargeable with notice that her land would be taken so as to preclude her from recovering the value of the property at the time of its condemnation by the park commissioners, in the absence of any unequivocal act on the part of the park commissioners prior to the acquisition and improvement of said property indicating that it would be included in the limits of the park.

5. After the passage of the Act of 1905, permitting Washington's headquarters at Valley Forge to be included within the park, a property adjacent to Washington's headquarters was purchased by plaintiff and used as a residence and place for serving refreshments to visitors at the park, considerable improvements being made thereto. Thereafter, the park commissioners defined the limits of the park so as to include plaintiff's land and condemned it, and so notified plaintiff. The Commonwealth contended that the value of plaintiff's land must be taken as of the date of the passage of the Act of 1893. Plaintiff contended that she was entitled to recover the value of the land and improvements at the time when she was notified of the taking. The lower court decided that the Commonwealth by the passage of the said acts had not unequivocably committed itself to taking that part of Valley Forge in which plaintiff's property lay; and assessed the damages in accordance with plaintiff's contention. *Held*, no error.

Philadelphia Parkway, 250 Pa. 257, distinguished.

6. In such case, the court made no error in considering, in connection with the question of damages, the value of the premises for the purpose of serving refreshments and otherwise entertaining visitors to the park.

Argued Feb. 5, 1918. Appeal, No. 13, Jan. T., 1918, by defendant, from judgment of C. P. Montgomery Co.,

Statement of Facts—Opinion of the Court.    [261 Pa.

Dec. T., 1916, No. 54, dismissing exceptions to findings of fact and conclusions of law, in case of Mary L. Rowan v. Commonwealth of Pennsylvania. Before BROWN, C. J., POTTER, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Appeal from the award of jury of view in condemnation proceedings. Before MILLER, J.

The opinion of the Supreme Court states the facts.

The case was tried by a judge without a jury who found in favor of the plaintiff for $6,500.

Exceptions to the findings of the trial judge were dismissed and judgment was entered on the findings. The Commonwealth appealed.

*Errors assigned* were in dismissing the exceptions.

*J. P. Hale Jenkins,* with him *Francis Shunk Brown* and *Montgomery Evans,* for appellant.

*J. Washington Logue,* with him *M. M. Gibson,* for appellee.

OPINION BY MR. JUSTICE FRAZER, April 3, 1918:

The Commonwealth, through the Valley Forge Park Commission, appropriated plaintiff's property for park purposes and, being unable to agree with her as to the compensation to be paid, viewers were appointed from whose award an appeal was taken and the case tried before the court below without a jury. From the decree of the court the Commonwealth appealed. The principal questions raised are the proper measure of damages, and the time from which they are to be computed.

The paper book filed on behalf of the Commonwealth contained flagrant violations of our rules. The statement of questions involved violates the rule as to length. This error is attempted to be corrected by filing a typewritten statement, a practice not to be commended.

Further, the assignments of error, four in number, are defective. Each alleges error in the findings or conclusions of law of the court below, but not one quotes a finding nor do they show exceptions taken, or the action of the court thereon, although exceptions to the findings were, in fact, filed and argued and formally overruled. We have repeatedly said assignments of error are an essential part of the pleadings and on appeal must be complete in themselves without reference to other parts of the record: North Mountain Water Supply Co. v. Troxell, 223 Pa. 315; Burkhard v. Penna. Water Co., 243 Pa. 369. Where error is assigned to the findings and conclusions of the court below the particular one to which exception is taken should be quoted, and the action of the court set forth, together with the exception, in order that the assignment shall show the complete transaction: Land Title & Trust Co. v. Shoemaker, 257 Pa. 213; Lehigh Valley Trust Co. v. Strauss, 258 Pa. 382. The appeal might well be quashed because of the defects referred to.

We have examined the case on its merits, however, and find no error in the conclusion reached by the learned judge of the court below. The Act of May 30, 1893, P. L. 183, relating to the acquisition of Valley Forge as a public park "for the purpose of perpetuating and preserving the site on which the Continental Army under which General George Washington was encamped in winter quarters at Valley Forge" provides in section one that title to the grounds, "including Forts Washington and Huntingdon, and the entrenchments adjacent thereto, and the adjoining grounds, in all not exceeding two hundred and fifty acres, but not including therein the property known as Washington's headquarters,...... the location and boundaries thereof to be fixed by the commissioners hereafter mentioned," should be "vested in the State of Pennsylvania" and laid out and maintained forever as a public park. Section three of the act provides for payment for the property taken and the fix-

ing of the value of such property, in event of their failure to agree with the owners, by a jury to be appointed by the Court of Quarter Sessions, with a further provision that "if the said commissioners shall delay petitioning, as aforesaid, for the period of sixty days after notice is given of their taking possession of said ground, then said jury shall be appointed upon the petition of any person whose property shall be so taken." An amendment to Section 1 of the Act approved March 19, 1903, P. L. 37, increased the maximum area of the park to five hundred acres, and by Act of April 7, 1905, P. L. 117, this limit was further augmented to one thousand acres. The last named act also removed the exception appearing in the Act of 1893, with reference to Washington's headquarters, thus formally including that property within the possible park area. By Act of June 23, 1917, P. L. 640, the maximum area was still further increased to fifteen hundred acres. The amendatory acts preserved in the identical words the provision of the Act of 1893 referring to location and boundaries. Plaintiff's property, consisting of a lot on which was erected a dwelling house and a small building used for the purpose of a shooting gallery and for serving refreshments and selling souvenir postal cards to persons visiting the park, adjoined Washington's headquarters on the south. Plaintiff purchased the property in 1908 from her husband who had become the owner in 1906. They occupied the premises as a residence until 1916, and derived considerable revenue by serving refreshments and entertaining visitors to Washington's headquarters. At a meeting of the Valley Forge Park Commissioners, held June 5, 1916, a resolution was adopted fixing "the location and boundaries and area of the ground to be taken in addition to those heretofore acquired" so as to include plaintiff's premises, and on June 24, 1916, formal notice was given plaintiff that her "land had been appropriated and condemned by said Commonwealth of Pennsylvania for public purposes."

The Commonwealth contends plaintiff's land was taken and condemned by the Act of 1893, and that the value of her property must, accordingly, be determined as of that date.

The statutory provisions quoted clearly indicate that the legislature contemplated further steps to be taken by the commissioners to fix the location and boundaries of the two hundred and fifty acre tract they were given power to appropriate. The maximum area merely was given, leaving to the commissioners to fix the exact boundaries, the only positive direction to them being to include the forts and adjacent trenches. Until after the commissioners had fixed the exact location and boundaries, owners of land not covered by these designated objects, were without means of determining whether or not their property would be within the area required by the State. Upon the location and boundaries being fixed, Section 3 of the Act of 1893, contemplates giving notice to the owners, and petition for appraisement by a jury of view within sixty days thereafter. Manifestly, until these preliminary steps are taken by the commissioners, no right to ask for the appointment of a jury accrues to neighboring property owners, as their property may never be taken. This conclusion is strengthened by the subsequent legislation permitting the commissioners to increase the park tract. Surely property owners in the vicinity were not bound to foresee a gradual growth of the park and its extent, and improve their property at the risk of losing the cost of such improvements in the event the commissioners should at a future day decide to exercise their powers and include it within the then existing or subsequently enlarged maximum park area.

The Commonwealth concedes the general rule that damages for taking or injury to land are to be determined as of the date of the actual taking or the doing of some unequivocal act by which the municipality or the State indicates the possession of the owner is about to be disturbed: Volkmar Street, Philadelphia, 124 Pa. 320;

Whitaker v. Phœnixville Boro., 141 Pa. 327; but relies
upon Philadelphia Parkway, 250 Pa. 257, as bringing
this case within the exception to the rule. An exami-
nation of the opinion in that case shows the facts there
clearly distinguish it from the present case. The court
there recognizes the general rule referred to above, but
bases the decision on the fact that the city had committed
an unequivocal act showing an intention to open the
Parkway, and had followed its action by actual work
covering a period of years; such proceedings the court
holds are a sufficient substitute for the formal ordinance
usual in street opening cases. It should be noted that
in the parkway case (page 262) there was "a defined
public way within specified and limited boundaries," and
it is said (page 264) : "The termini of the boulevard are
definitely fixed by City Hall at one end and Fairmount
Park at the other. The courses and distances are marked
on the ground and at some points the parkway is open to
public use. Buildings have been torn down at each end
and a large amount of work done looking to final com-
pletion. As hereinbefore stated, the parkway must be re-
garded as one entire improvement. It is either this or
nothing." In the Parkway case exact boundaries of the
highway were designated from the beginning, and prop-
erty owners knew at that time whether their property
was within or without the line of the improvement. The
decision merely holds in effect that where such is the
case, and the improvement is an entire one and cannot
be carried out in part only and yet effectuate the pur-
pose for which it was planned, the adoption of a formal
ordinance is not a necessity, but the liability of the city
for damages may be fixed by its act in taking physical
possession of a portion of the property and beginning
the work of improvement, thus indicating an unequivocal
intention to take the whole for the purpose for which in-
tended. That case must be confined to its own facts.

In the present case we are met at the start with the
fact that the boundaries of the two hundred and fifty

acre tract were not specified, but left to the discretion of the commissioners to be exercised at such time as they might see fit. No specific area or property, other than the forts and entrenchments named in the act, was necessary to carry out the purpose of the statute. The legislature originally limited the park area to a maximum of 250 acres, even excluding Washington's headquarters, the most important part in point of interest, more than likely because the precise extent of the land used by Washington's army was unknown. Until the commissioners acted by definitely fixing the boundaries there was no means of determining the property to be included within the tract the State proposed to acquire. The subsequent acts increasing the area were equally indefinite. On the whole there is nothing to take the present case out of the general rule above stated, and the time of appropriation must be considered as of the date when the commissioners formally concluded to take plaintiff's property and notified her of that fact.

The remaining question is whether the court properly considered, in connection with the question of damages, the value of the premises for the purpose of serving refreshments and otherwise entertaining visitors to the park. The court based its findings on the market value of the premises "for any purpose that would induce persons to purchase it at the time it was taken." This is in accord with the general rule permitting consideration of any use to which the property may fairly be applied and adopted: Marine Coal Co. v. Pittsburgh, etc., R. R. Co., 246 Pa. 478; North Shore R. R. Co. v. Penna. Co., 251 Pa. 445. The amount fixed by the court below, in view of the testimony of the witnesses on both sides, is conservative, and, in fact, no fault is found with the sum awarded except the single contention that the court improperly considered plaintiff's use of the property for business purposes as an item in estimating its market value.

The judgment is affirmed.