Egan, Appellant, *v.* City of Philadelphia.

272

Argued October 27, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunning-
ham, Baldrige, Stadtfeld and Parker, JJ.

*Herbert A. Speiser* of *Speiser & Speiser,* for ap-
pellant.

*James Francis Ryan,* Assistant City Solicitor, and
with him *David J. Smyth,* City Solicitor, for appellee.

Opinion by Stadtfeld, J., March 3, 1933:

By an act of the Legislature, approved the 30th day
of April, 1925, P. L. 414, cities of the first class were
authorized to acquire through purchase or condem-
nation proceedings lands either for temporary or per-
manent use in connection with the holding of any
public exposition in celebrating any sesqui-centennial
in such city.

Pursuant to said Act of Assembly the council of
the City of Philadelphia duly enacted a number of

ordinances, approved the 22nd day of June, 1925, authorizing the condemnation of certain lands for exposition purposes in connection with the celebration of the sesqui-centennial.

On February 15, 1926, the council of said city, pursuant to the authority of the same Act of Assembly, authorized the condemnation for temporary use for the same purpose, of certain land, a portion of which was owned by the Keystone State Real Estate Company, the appellant's predecessor in title, situate on the southern end of Broad Street, in said city, at a point near Packer Avenue which, before the exposition was plotted on the city plan, but was not yet opened.

The Board of Viewers, appointed by court for the purpose of assessing damages, filed its report which, inter alia, awarded to the Keystone State Real Estate Company the sum of $1,500, which award was by stipulation marked to the use of Thomas C. Egan, the appellant here. Upon the trial of an appeal from said award, Walter H. Phillips, an expert real estate witness called on behalf of plaintiff, testified that the fair rental value of plaintiff's property in February of 1926 was $1,500 per month, based upon the fact that the sesqui-centennial was directly across Packer Avenue from this property; that it could have been rented for at least six months at that figure; that the sesqui-centennial was to last six months from the time it opened; that the rental value, independent of the sesqui-centennial exposition, was $175 a month. The testimony of this witness, as to the rental value of $1,500 per month, based upon the presence of the sesqui-centennial, was, on motion of counsel for the city of Philadelphia, stricken out by the court. The testimony of another witness, William C. Heyde, based on like consideration, was also stricken out. It was agreed by counsel for both parties that the city took the land of plaintiff for a period of one year.

The court, GORDON, JR., J., submitted the case to the jury with instructions to find what was the fair rental value of the land uninfluenced by any effect of the sesqui-centennial exposition. A verdict in favor of plaintiff was rendered in the sum of $1702.20 upon which judgment was subsequently entered after the refusal of a motion ex parte plaintiff for a new trial. From that judgment this appeal was taken by plaintiff. The errors assigned are the striking out of the testimony hereinbefore referred to and the refusal of motion for new trial.

The sole question involved, as stated by appellant, is whether he should have been permitted to prove as his measure of damages the rental value of the ground taken, taking into consideration, in connection therewith, the fact that a portion of that value may have been created by reason of a previous taking of other ground in the immediate neighborhood for the same purpose.

The principles involved and governing are the same whether there be a permanent taking or one for temporary use only. In the former the fair market value is to be ascertained, in the latter, the fair rental value. Plaintiff is, of course, entitled to "just compensation," but that must be based on rental value, and not speculative in character. There must be reasonable certainty of the future beneficial use to which plaintiff's property may be put. In the instant case, the hazardous character of the use for sesqui-centennial exhibition purposes was admitted by plaintiff's witnesses, not only in the fact that the exposition itself was to last only six months from the date of opening, but also the uncertainty of the term of the lease which might be negotiated. The testimony stricken out also involved the consideration of an enhancement in value by reason of the very use for which the property was appropriated by the city.

Prior to the condemnation proceedings, plaintiff's property had not been used for any purpose, and its rental value admittedly was the same after the termination of the exposition as it had been before.

The rental value prior to the condemnation was $175 per month. If appellant's theory were adopted, it would be $1,500 per month by reason of the sesqui-centennial. Such extraordinary rise must be justified by substantial testimony based on some acceptable standard. This increase was entirely speculative and conjectural, and based on an estimate of the expected result from the proposed use for which the property was condemned. "Values based on current earnings have a dependable foundation. Values based on anticipated earnings have not. ...... Mere prospects have little pecuniary value." Laureldale Cem. Co., v. Reading Co., 303 Pa. 315, 323, 324.

There can be no question but that the testimony stricken out was highly speculative. All of the prior condemnations were for the same purpose as that for which plaintiff's property was taken. The exposition was not yet in operation, in fact was only in progress of construction. Any alleged increase of value would arise as a result of the exercise of the right of condemnation for this purpose. The effect of the exposition could not reflect itself until it was actually in operation.

Appellant relies largely on the case of Rowan v. Commonwealth, 261 Pa. 88. In that case, the legislature gave to the Valley Forge Park Commission the right to fix the boundaries for that park, limiting only the amount of ground to be taken. Condemnation was had. Subsequently the area was increased by Act of Assembly and pursuant thereto, the Commission condemned the plaintiff's ground. It was held upon the appeal that plaintiff was entitled to the value of his property as of the time of the taking, and evidence as to that value as enhanced by reason of the sale of

refreshments to visitors to the park was properly admitted. The distinction between that case and the instant case is that in the former there had been an actual use of adjacent property which had given an actual value to the land later condemned. In the instant case the land appropriated was in connection with and as a part of the general scheme of the exposition in process of construction and to be put into operation. What profits, if any, might arise were highly conjectural and speculative. There is a wide margin between anticipation and realization.

The condemnations in the instant case were all for one and the same purpose, and the testimony which was stricken out was based on a consideration of enhanced values as a result of the prior condemnations locating the sesqui-centennial which had not yet materialized.

In the case of Wadsworth v. Manufacturer's W. Co., 256 Pa. 107, Mr. Justice Moschzisker quotes approvingly from the opinion by Mr. Justice Holmes in City of New York v. Sage, 239 U. S. 57, 61, where he says: "No doubt, when this class of questions first arose, it was said in a general way that adaptability to the purposes for which the land could be used most profitably was to be considered; and that is true. But it is to be considered only so far as the public would have considered it if the land had been offered for sale in the absence of the city's exercise of the power of eminent domain. ...... The city is not to be made to pay for any part of what it has added to the land by thus uniting it with other lots, if that union would not have been practicable or have been attempted except by the intervention of eminent domain."

The principle on which these decisions are based is stated in Mills on Eminent Domain, Sec. 174 as follows: "The owner is not entitled to the increased value occasioned by the proposed improvement. The value should be estimated irrespective of the proposed

improvement." We are of the opinion that the court properly struck out the testimony which is the subject of the first and second assignment of errors.

The third assignment relates to the refusal of the motion for a new trial. The court, in submitting the case to the jury, instructed them to find the fair rental value, stating that "The fair rental value is determined upon a consideration of what the fair value is for the best use for which the land is available." Plaintiff, had no reason to complain of these instructions.

The purpose of the sesqui-centennial exposition was an expression of state and municipal pride. It was historical and educational in character and not for profit. In a comprehensive project such as that, it is difficult to determine in advance the extent of land required to be appropriated. If by reason of a number of successive ordinances, appropriating land for the purpose of the exhibition, the city should be confronted by any alleged increase in values, as a result of the location of the projected exhibition, such laudable enterprises could not be contemplated.

Each and every ordinance was in furtherance of one purpose. The rental value of plaintiff's land was the same after the termination of the exhibition as before. To say that he should share in any benefits reflected from the operations of this exhibition in the interval does not appeal to our judgment. While there are some authorities which support appellant's position, we believe that the weight of authority and better reasoning support our conclusion.

The assignments of error are overruled and judgment affirmed.