636

# CIRCUIT COURT OF THE CITY OF NORFOLK

In re James G. Close,
Irene H. Close,
Mary G. Houmis,
and the Real Property Located at
227 York Street in the
City of Norfolk, Virginia 23510,
Tax Map Parcel No. 21176100

v.

City of Norfolk

December 23, 2009

Case No. (Civil) CL09-4055

By Judge Karen J. Burrell

This matter came before the Court on October 5, 2009, on the City of Norfolk's ("Respondent's") Demurrer to the Petition for Declaratory Judgment filed on behalf of Mr. James G. Close, Ms. Irene H. Close, Ms. Mary G. Houmis, and the real property located at 227 W. York St. in the City of Norfolk, Virginia 23510, Tax Map Parcel No. 21176100 ("Petitioners"). Having considered the parties' pleadings, oral and written arguments, the transcript, and the official record, the Court finds that Respondent's Demurrer should be sustained in part and overruled in part.

The primary question presented to the Court is whether Petitioners state a valid claim for inverse condemnation in their Petition for Declaratory Judgment. This question breaks down into three disputed issues: (1) whether Petitioners properly alleged ownership of private property for the purpose of an inverse condemnation claim, (2) whether Petitioners allege a taking or damaging of their property, and (3) whether Petitioners allege that Respondent's taking or damaging was done for public uses. As explained below, while Petitioners successfully allege sufficient facts to meet the "ownership of private property" and "taken or damaged" requirements of a claim for inverse condemnation, they fail to allege that the taking or damaging on York Street was for public uses. Therefore, Petitioners do not state an actionable inverse condemnation claim with respect to Respondent's actions on York Street, and this Court sustains Respondent's Demurrer with respect to the claims regarding the restrictions on York Street.

Conversely, Petitioners do state a valid claim for inverse condemnation to the extent that Respondent's closure of Duke Street damaged Petitioners' easement for ingress and egress to Petitioners' property on York Street. Judicial precedent in Virginia holds that, in an action for inverse condemnation, the challenger of an action of a body with condemnation power has the burden of proving that the action taken was unreasonable and therefore a taking or damaging. Precedent also holds that a pleader need not descend into details of proof in order to withstand a demurrer. At this stage of the proceedings, Petitioners have alleged that Respondent's closure of Duke Street prevented reasonable access to their property on York Street. In this allegation, Petitioners essentially claim that Respondent's actions were unreasonable and not an exercise of police power, and that their property was "taken or damaged." Since Petitioners need not descend into details of proof in their initial pleading, the allegation satisfies the "taken or damaged" requirement of an inverse condemnation claim for the purpose of withstanding a demurrer. Petitioners also claim that the closure of Duke Street, and hence, the damaging of their easement, was for a public use, road maintenance, and therefore Petitioners do state a valid claim for inverse condemnation with respect to the Duke Street closure. As a result, this Court overrules Respondent's Demurrer with respect to Petitioners' claim that Respondent inversely condemned Petitioners' property through its restrictions of Duke Street.

## I. *Standard of Review for a Demurrer*

In considering a demurrer, a court does not "evaluate and decide the merits of a claim; [a demurrer] only tests the sufficiency of factual allegations to determine whether the motion for judgment states a cause of action." *Fun v. Virginia Military Inst.*, 245 Va. 249, 252, 427 S.E.2d 181, 183 (1993). A demurrer "admits the truth of all material facts that are

properly pleaded, facts which are impliedly alleged, and facts which may be fairly and justly inferred from alleged facts." *Delk v. Columbia/HCA Healthcare Corp.*, 259 Va. 125, 129, 523 S.E.2d 826, 829 (2000) (quoting *Cox Cable Hampton Roads, Inc. v. Norfolk*, 242 Va. 394, 397, 410 S.E.2d 652, 653 (1991)). A demurrer does not, however, "admit the correctness of the pleader's conclusions of law." *Fox v. Custis*, 236 Va. 69, 71, 372 S.E.2d 373, 374 (1988) (citation omitted). A court considering a demurrer may rely on "substantive allegations of the pleading attacked [and] any accompanying exhibit mentioned in the pleadings," *Flippo v. F & L Land Co.*, 241 Va. 15, 17, 400 S.E.2d 156, 156 (1991) (citing Va. Sup. Ct. Rule 1:4(i)), and it "may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Ward's Equipment, Inc. v. New Holland North Am., Inc.*, 254 Va. 379, 382-83, 493 S.E.2d 516, 518 (1997) (citing *Fun*, 245 Va. at 253, 427 S.E.2d at 183).

Additionally, "[w]hen a . . . complaint contains sufficient allegations of material facts to inform a defendant of the nature and character of the claim, it is unnecessary for the pleader to descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (citation omitted). The Supreme Court of Virginia stated further that "even though a . . . complaint may be imperfect, when it is drafted so that defendant cannot mistake the true nature of the claim, the trial court should overrule the demurrer." *Id.* (citation omitted).

Therefore, in considering Respondent's Demurrer, the Court accepts as true the material facts properly pleaded in, impliedly alleged in, and fairly and justly inferred from Petitioners' Petition for Declaratory Judgment, as set forth below in Part II.

## II. *Background*

At all times relevant, Petitioner Mary G. Houmis owned and owns the real property ("the Property") located at 227 York St., Norfolk, Virginia 23510, and Petitioners James G. Close and Irene H. Close "were and are the long-term tenants of the Property." (Pet. for Decl. J. ¶¶ 1, 2 [hereinafter "Pet."].) The Close Petitioners have owned and operated a business, the Monticello Antique Shop, Inc., in a building on the Property since 1982. (*Id.* at ¶ 6.)

The Property is located between Duke and Boush Streets, and it has frontage on York Street. (*Id.*) Public access to the Property is available only through York St., and public access to the Monticello Antique Shop, Inc., is available only through the store's two entrances on the York Street frontage. (*Id.* at ¶ 7.) The Property "possesses an easement for ingress and

egress to York Street" because its frontage on York Street is the Property's sole frontage on a public right-of-way. (*Id.* at ¶¶ 17, 18.)

Beginning in October of 2007, Respondent started to restrict access to York Street in order "to accommodate the construction of the Marriott Residence Inn, located at 227 West Brambleton Avenue. (*Id.* at ¶ 8.) Respondent "fenced off one lane of York Street between the exit of the York Street Parking Garage and the intersection with Duke Street, including the section of York Street on which the Property has frontage." (*Id.*) Increasingly, Respondent "closed York Street to all vehicular traffic on an intermittent basis," and Respondent's actions also eliminated the parking spaces on York Street that were in front of the Property. (*Id.* at ¶ 9.) These conditions lasted from October 2007 through August 2008, a period of about ten months, during which Respondent "intermittently closed, re-opened, and closed [York Street] to vehicular traffic, such that reasonable public access was not afforded to the Property." (*Id.* at ¶ 10.) In other words, Respondent "denied all reasonable access to the Property" during this time. (*Id.* at ¶ 19.)

Beginning in August of 2008 and lasting through May of 2009, a period of nine months, Respondent "closed York Street between the York Street parking garage and Duke Street to all public vehicular traffic, such that no access was afforded to the property." (*Id.* at ¶ 11.) Respondent also built "a construction barrier along the sidewalk in front of the Property" during this time, and this further denied "reasonable access to the property." (*Id.* at ¶ 12.) These actions "prevented all public access to the Property" (*id.* at ¶ 16), and "all access to the Property." (*Id.* at ¶ 19.)

Beginning in July of 2008, Respondent "closed Duke Street to all vehicular traffic at its intersection with Bute Street and York Street, west and south of the Property." (*Id.* at ¶ 13.) This prevented reasonable access to the Property, and this condition lasted until November of 2008, a period of four months. (*Id.* at ¶¶ 13, 15.) Respondent closed Duke Street "for the purpose of the construction and/or reparation of public utilities." (*Id.* at ¶ 14.)

### III. *Discussion*

"Article I, Section 11, of the Constitution of Virginia confers on a property owner a right to just compensation from the government when the government takes or damages the owner's property for public use." *Richmeade, L.P. v. City of Richmond*, 267 Va. 598, 601, 594 S.E.2d 606, 608 (2004) (citing Va. Const., Art. 1, § 11; *State Highway & Transp. Comm'r v. Linsly*, 223 Va. 437, 443, 290 S.E.2d 834, 838 (1982); *Chesapeake & Ohio RR. v. Ricks*, 146 Va. 10, 18, 135 S.E. 685, 688 (1926)). The Supreme Court of Virginia "has consistently held that, when the government failed to condemn private land taken for public purposes, the landowner's recourse

was to file an action for inverse condemnation based on the implied contract between the government and the landowner." *Id.* A cause of action for inverse condemnation:

> is a specific type of proceeding based on a constitutionally created right connected to the "taking" or "damaging" of property by the government. To take or damage property in the constitutional sense does not require that the sovereign actually invade or disturb the property. Taking or damaging property in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property. *[Board of Supervisors of] Prince William County v. Omni Homes*, 253 Va. 59, 72, 481 S.E.2d 460, 467 (1997) *[overruled on other grounds as stated in Board of Supervisors of Culpeper County v. Greengael, L.L.C.,* 271 Va. 266, 287, n. 12,. 626 S.E.2d 357, 369, n. 12 (2006)]; *City of Lynchburg v. Peters,* 156 Va. 40, 48-49, 157 S.E. 769, 772 (1931); *Lambert v. City of Norfolk,* 108 Va. 259, 265, 61 S.E. 776, 778 (1908). Thus, an action for inverse condemnation is an action seeking redress for the government's action in limiting property rights the landowner holds. In that regard, the act giving rise to the [claim] is not an act aimed at the property, but rather an act that limits the landowner's ability to exercise his property rights without paying the landowner for that limitation.

*Kitchen v. City of Newport News,* 275 Va. 378, 386, 657 S.E.2d 132, 136-37 (2008).

Hence, to state a claim for inverse condemnation, a petitioner must allege (1) she owns private property or has some private property right, (2) the property or a right connected to that property has been taken or damaged by the government or a body with condemnation authority, (3) the taking or damaging was for "public use," and (4) the government or condemning authority failed to pay just compensation. Since Respondent clearly did not pay just compensation in this case, only the first three requirements of an inverse condemnation claim are discussed below.

A. *First Requirement: Ownership of Private Property*

In the Petition for Declaratory Judgment, Petitioner Mary G. Houmis alleges that she "is the fee simple owner of a parcel of real property ("the Property") located at 227 York St., Norfolk, Virginia, 23510," while Petitioners James G. Close and Irene H. Close state that they "were and are the long-term tenants of the Property." (Pet. ¶¶ 1, 2.) Additionally,

Petitioners allege that the Property possesses "an easement for ingress and egress to York Street" ("the Easement"). (*Id.* at ¶ 17.)

Respondent admits that Petitioners allege the ownership of both the Property and the Easement, but Respondent also contends that while the Property does constitute "private property" (Resp't's Br. in Supp. of Dem. 2-3 [hereinafter "Br. in Supp."]), the Easement does not. (*Id.* at 3.) Despite Respondent's position, whether the Easement itself constitutes "private property" is irrelevant. "Taking or damaging property in the constitutional sense means that the governmental action adversely affects the landowner's ability to exercise a right connected to the property." *Kitchen v. City of Newport News*, 275 Va. 378, 386, 657 S.E.2d 132, 136 (2008). Petitioners' ownership and rights to use the Easement are connected to the ownership of the Property. Therefore, the Easement is pertinent to the proceedings at hand, and Petitioners, by alleging ownership of the Property and the Easement, meet the inverse condemnation claim requirement of "ownership of private property." Therefore, Respondent's Demurrer cannot be sustained with respect to this aspect of an inverse condemnation claim.

B. *Second Requirement: Property or Right Connected to Property Has Been Taken or Damaged by the Government or a Body with Condemnation Authority*

Second, to state a valid claim for inverse condemnation, Petitioners must allege that the property or right connected to the property has been taken or damaged by the government or a body with condemnation authority. Clearly, in this case, the "government or body with condemnation authority" is Respondent, the City of Norfolk. Therefore, this section focuses on what constitutes "taking or damaging," and whether Petitioners alleged that Respondent took or damaged the Property.

1. *"Taken or Damaged": When Restrictions on Direct Access Easements Are Compensable*

The Supreme Court of Virginia has confronted the issue of what constitutes "taking or damaging" with respect to direct access easements in a number of cases, each of which providing some guidance on which governmental actions require just compensation. In *Swift & Co. v. City of Newport News*, 105 Va. 108, 52 S.E. 821 (1906), the City of Newport News raised the grade of a street in front of the plaintiff property owner's beef and cold storage business, which fronted the street. *Id.* at 111-12, 52 S.E. at 823. The plaintiff alleged that the increased grade level damaged the market value of his property in the amount of $400.00. *Id.* at 112, 52 S.E. at 823. The Supreme Court of Virginia proceeded to interpret the meaning of the newly added provision, "or damaged," to the Virginia Constitution's bar

against taking private property for public use without just compensation: "[I]t is now provided . . . that the General Assembly 'shall not enact any law whereby private property shall be taken *or damaged* for public uses, without just compensation'." *Id.* at 113, 52 S.E. at 823 (noting how the same section in the prior Virginia Constitution lacked the phrase "or damaged"). The Court stated, "[U]nder the present Constitution, proper acts of the legislature (or ordinances of the city council) for the purpose of both obtaining the necessary consent and providing just compensation are essential to the act of taking *or damaging* private property for public use. . . ." *Id.* at 120, 52 S.E. at 826. Pursuant to this conclusion, the Court affirmed the trial court judgment in favor of the plaintiff. *Id.* at 120, 128,52 S.E. at 826, 828.

In *Town of Galax v. Waugh*, 143 Va. 213, 129 S.E. 504 (1925), the Supreme Court of Virginia considered the case of two buildings abutting Main Street. *Id.* at 217, 129 S.E. at 505. Access to one building's basement, which was used to conduct a retail business, "was almost entirely by a door opening on Main [S]treet," while access to the other building "was also by a door on Main [S]treet." *Id.* At some point, the town of Galax raised the grade of Main Street; this resulted in a grade-raise of four feet four inches in front of the basement door and three feet seven inches in front of the second building's door. *Id.* at 217-18, 129 S.E. at 505. The Court found "that the entrance to [the first building's basement room was] virtually closed up and that there [was] no direct entrance to the same"; moreover, the second building "now has to be reached from the sidewalk by five steps, when prior to the grading [it was] practically on a level with the sidewalk." *Id.* at 218, 129 S.E. at 505. The Court acknowledged:

> [T]here is a way of entering from the rear of the [first] building into the large basement room, by what is now an inconvenient passway and in its present condition not easily usable by trucks, and there is also a way down from the first story sales room fronting on [another] street — this by means of stairs.

*Id.* at 218-19, 129 S.E. at 505. Despite this possible alternative, the Court held:

> A city o[r] town has no right to obstruct its streets so as to deprive the property owner of free access to and from his property abutting thereon. Such access materially affects the value of his property, and is a "damage" peculiar to him for which the Constitution provides he shall be compensated.

*Id.* at 237, 129 S.E. at 511, The Court found that the owner of the buildings had "sustained a damage for which he is entitled to compensation. . . ." *Id.*

In *Wood v. City of Richmond*, 148 Va. 400, 138 S.E. 560 (1927), the Court addressed an appellant's complaint that the City of Richmond, through its agents, required the appellant to close down one of two driveways into his gasoline station, which abutted two streets and maintained driveways entering into each of those streets. *Id.* at 402, 138 S.E. at 561. Safety was the primary reason for the closure. *Id.*, at 403, 138 S.E. at 561. The Court conceded that "an abutter has an easement in the public road which amounts to a property right," but also held "that the exercise of this right is subordinate to the right of the municipality, derived by legislative authority, to control the use of the streets as to promote the safety, comfort, health, and general welfare of the public." *Id.*, at 407, 138 S.E. at 562. The Court continued:

> [E]very property owner is bound to so use and enjoy his own as not to interfere with the general welfare of the community in which he lives. It is the enforcement of this duty which pertains to the police power of the State, so far as the exercise of that power affects private property. Whatever restraints the legislature imposes upon the use and enjoyment of property within the reason and principle of this duty, the owner must submit to, and for any inconvenience or loss which he sustains thereby he is without remedy. *It is a regulation and not a taking, an exercise of police power, not of eminent domain.*

*Id.* at 407, 138 S.E. at 562-63 (emphasis added). The Court found that the closing of the driveway was a reasonable exercise of police power. *Id.* at 408, 138 S.E. at 563.

In *State Highway Comm'r v. Easley*, 215 Va. 197, 207 S.E.2d 870 (1974), the State Highway Commissioner, in addition to condemning two properties for highway improvement, "undertook to regulate access to the two parcels by placing curbing along the highway right of way." *Id.* at 198, 207 S.E.2d at 871. "The trial court apparently admitted the evidence of damage from loss of access on the theory that such damage was compensable if it occurred conjointly with a taking of property." *Id.*, at 198, 207 S.E.2d at 872. However, the Supreme Court of Virginia held:

> [T]he owner of property abutting a public road has no right to compensation when the state, in the exercise of its police powers, reasonably regulates the flow of traffic on the highway. [T]he burden is on him who assails the action of the Commissioner to show that the Commissioner acted unreasonably.

*Id.* at 203, 207 S.E.2d at 875. Because the Court found that the Commissioner had provided access to the properties through openings in the curbing and that such access was reasonable, the trial court's admission of the "limitation of access" damage was in error. *Id.*, at 204, 207 S.E.2d at 875.

Similarly, in *State Highway Comm'r v. Howard*, 213 Va. 731, 195 S.E.2d 880 (1973) (*per curiam*), the Supreme Court of Virginia considered a situation in which the State Highway Commissioner installed a median to a highway as part of improving it. *Id.*, at 732, 195 S.E.2d at 881. While the median restricted a landowner's access to the opposite side of the highway, requiring that he travel a short distance to access it, the Court stated that "[t]he installation of the median strip separating northbound traffic from southbound traffic was and is a valid traffic regulation adopted by the Highway Commissioner in the exercise of the police power of the State vested in him by statute." *Id.* (citing *Davis v. Marr*, 200 Va. 479, 106 S.E.2d 722, 726 (1959)). Moreover, "the abutter has no property right in the continuance of maintenance of the flow of traffic past his property. Circuity of route imposed upon the abutter, resulting from the exercise of a police power in the regulation of traffic, is an incidental result of a lawful act." *Id.*

The Supreme Court of Virginia confronted the issue of the complete extinguishment of an abutter's direct access easement to a highway in *State Highway & Transp. Comm'r v. Linsly*, 223 Va. 437, 290 S.E.2d 834 (1982). The Court found that, although the State Highway and Transportation Commissioner planned to build a service road that would provide indirect access to the highway, the principle underlying the prohibition of just compensation when direct access rights are reduced or limited does not apply to cases in which direct access is terminated. *Id.* at 443, 290 S.E.2d at 837. Furthermore, the Commissioner's petition for condemnation "asked for the appointment of condemnation commissioners to ascertain the 'the value of the land taken including easements'." *Id.* at 443, 290 S.E.2d at 838, The value of the easements, including the direct access easement, "was reflected in the value of the land." *Id.* Thus, the Court held, "in condemnation proceedings for the acquisition of land and easements in the conversion of a conventional highway into a limited access highway, the same test for the determination of damages must be applied as in other cases where the Commissioner exercises the right of eminent domain." *Id.* at 444, 290 S.E.2d at 838-39, In other words, "the effect that extinguishment of easements of direct access had on the value of the residue was relevant to a determination of damages." *Id.*, at 445, 290 S.E.2d at 839.

Similarly, in *State Highway & Transp. Comm'r v. Dennison*, 231 Va. 239, 343 S.E.2d 324 (1986), the Court found that certain curbing around a parcel of land "left no openings from Route 23 to the residue of that parcel," *id.* at 246, 343 S.E.2d at 328, which had previously enjoyed direct access to Route 23, *id.* at 241, 343 S.E.2d 325-26. Indirect access did still exist, *id.*, at 245, 343 S.E.2d at 328, and the parcel still maintained direct access to

another highway, *id.*, at 241, 343 S.E.2d at 325-26. Nevertheless, the Court affirmed the trial court's decision to admit evidence of the damage caused to the parcel by the elimination of direct access, along with the following jury instruction:

> [T]he owner of a land abutting a public highway is only entitled to reasonable access to his property. His rights of access are subordinate to the right of the State to control traffic over its highways. If you find that the landowners in this case will have reasonable access to the property after the construction of this project, you shall not make any awards for residue damages that might result from a change in access.

*Id.* at 246, 343 S.E.2d 329.

*State Highway & Transp. Comm'r v. Lanier Farm, Inc.*, 233 Va 506, 357 S.E.2d 531 (1987), involved a situation in which a landowner claimed that the State Highway and Transportation Commissioner's taking extinguished an access easement the landowner planned to build in the future. *Id.*, at 508, 357 S.E.2d at 532. The Supreme Court of Virginia stated, "[T]he frustration of the owner's plans for development or future use of the property is not in itself a compensable item of damages." *Id.*, at 510, 357 S.E.2d at 533. Additionally, the Court affirmed its jurisprudence thus far in the effects of government limitations on or extinguishment of direct access easements:

> Although a complete extinguishment and termination of all the landowners' rights of direct access to an abutting highway constitutes a compensable "taking" within the eminent domain clause of the Virginia Constitution, a mere partial reduction or limitation of an abutting landowner's rights of direct access, imposed by governmental authority in the interest of traffic control and public safety, constitutes a valid exercise of the police power and is not compensable in condemnation proceedings.

*Id.* (citations and internal quotations omitted).

From this body of case law and jurisprudence, this Court observes and extracts certain rules that govern the subjects of taking and damaging, police powers, and the limitation or termination of direct access easements. First, a government's complete extinguishment of a direct access easement is a compensable taking or damaging. Second, a landowner is only entitled to reasonable access to his property. Third, it is within the police powers of governmental bodies to reasonably regulate and restrict direct access easements. Finally, the burden is on the party challenging the government's

action to show that the government acted unreasonably. As discussed below, it is pursuant to these rules that the Court reaches its conclusions regarding Respondent's Demurrer.

### 2. *Petitioners Successfully Allege That Respondent Has "Taken or Damaged" Their Property*

Petitioners satisfy the "taken or damaged" aspect for alleging inverse condemnation because they claim numerous times in their Petition for Declaratory judgment that their direct access easement was either completely extinguished and terminated or restricted to the point that reasonable access was denied. First, Petitioners claim three times that *all* public access to the Property was denied from August 2008 through May 2009. (Pet. ¶¶ 11, 16, 19.) The *Waugh, Linsly*, and *Dennison* cases all stand for the proposition that, if a governmental body engages in an action that extinguishes a direct access easement, thus damaging the market value of the property benefiting from the easement, the landowner is entitled to compensation, regardless of whether indirect and inconvenient access is available to the landowner. Since Petitioners allege in paragraphs 11, 16, and 19 of the Petition for Declaratory Judgment that there was either no access or no public access to the property and that this caused a diminution in the value of the Property, Petitioners successfully allege that the Property was "taken or damaged."

Petitioners' second set of claims, essentially, are that there was neither *reasonable access* nor *reasonable public access* to the Property for a ten month period from October 2007 to August of 2008 (*id.* at ¶¶ 3, 19), resulting from fencing, elimination of parking spaces, and the intermittent closure of the street. (*Id.* at ¶¶ 3, 8, 9.) The burden of showing the unreasonableness of Respondent's restriction/damaging of the direct access easement is on Petitioners. *State Highway Comm'r v. Easley*, 215 Va. 197, 203, 207 S.E.2d 870, 875 (1974). At this point in the proceedings, the Court cannot ascertain whether the limitations were reasonable because there has been no opportunity for Petitioners to prove this. It is not required that Petitioners prove in their initial pleading that Respondent's actions resulted in an unreasonable restriction. As long as the Petition for Declaratory Judgment sufficiently alleges the material facts, Petitioners need not give details proving each fact in order to withstand the Demurrer. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (citation omitted). Petitioners' allegations of restrictions, along with their claims that the restrictions were unreasonable, are adequate for the purpose of alleging the "taken or damaged" requirement of an inverse condemnation claim. It is true that a partial reduction or limitation of a direct access easement in the interest of public safety is a non-compensable exercise of a legislature's police power. *See, e.g., State Highway & Transp.*

*Comm'r v. Lanier Farm, Inc.*, 233 Va. 506, 510, 357 S.E.2d 531, 533 (1987). However, *Easley*'s rule that a party challenging a restriction has the burden of proving its unreasonableness suggests that Petitioners should have an opportunity to meet that burden.

Third, Petitioners claim that Respondents closure of Duke Street to all vehicular traffic for four months resulted in a denial of reasonable access to the Property. (Pet. ¶¶ 13, 14, 15.) Because Petitioners allege a denial of reasonable access to the Property due to the closure of Duke Street, an allegation that mirrors their claim that Petitioners were denied reasonable access because of intermittent closures on York Street for the ten month period of time from October 2007 to August 2008, and because the burden of proving unreasonableness belongs to the Petitioners, the Duke Street claims also withstand the Demurrer. Again, at this early stage of the proceedings, proof of unreasonableness is not required to overcome a demurrer; the allegation will suffice. Thus, the Demurrer cannot be sustained on the ground that Petitioners have failed to allege that Respondent's actions resulted in a taking or damaging of the Property.

Respondent asserts that Petitioners "nowhere allege[] that access to the Property was either completely or permanently blocked" (Br. in Supp. 6; *see also* Br. in Supp. 7-11), and therefore, Respondent's actions should be classified as police regulation. (*See id.*, at 10.) Respondent emphasizes that the direct access easement was not permanently blocked, but, as Petitioners note, "[w]hether the extinguishment [of a direct access easement] is temporary or permanent is immaterial. . . ." (*See* Br. in Opp. 6-7.) The relevant factor is whether the easement was completely extinguished and terminated, *see, e.g., State Highway & Transp. Comm'r v. Lanier Farm, Inc.*, 233 Va. 506, 510, 357 S.E.2d 531, 533 (1987), and Petitioners allege this by claiming that there were periods when Respondent's actions led to no access, no public access, or no reasonable access to the Property. Moreover, the fact that a taking can be temporary and still mandate just compensation, *see, e.g., Anderson v. Chesapeake Ferry Co.*, 186 Va. 481, 492, 43 S.E.2d 10, 17 (1947) ("The principles involved and governing are the same whether there be a permanent taking or one for temporary use only. . . ." (citing *Egan v. Philadelphia*, 108 Pa. Super. 271, 274, 164 A. 813, 814 (1933))), contradicts Respondent's argument that the direct access easement must be permanently extinguished to be compensable.

Respondent also argues that it is significant that while Petitioners claim "all public access to the Property" was blocked, Petitioners nowhere claim that the owner, the owner's guests, or the owner's invitees were prevented from accessing the Property. (Br. in Supp. 11.) The significance of this argument is questionable for two reasons. First, as Petitioners point out, they are part of "the public." (Br. in Opp, 6.) Second, Petitioners also state in the Petition for Declaratory Judgment that "no access" and "no reasonable access" was afforded the property. (Pet. ¶¶ 11, 15.) Therefore,

even if Petitioners were not part of the public, the claims that there was "no access" and "no reasonable access" certainly would include Petitioners.

Additionally, Respondent asserts that Petitioners' claims with respect to the closure of Duke Street are irrelevant because the Property has no frontage on Duke Street and therefore has no right of access to Duke Street. (Br. in Supp. 10-11.) However, "the owner of a land abutting a public highway is . . . entitled to reasonable access to his property." *State Highway & Transp. Comm'r v. Dennison*, 231 Va. 239, 246, 343 S.E.2d 324, 329 (1986). If Blackacre abuts X Street, and X Street is accessible only through the use of Y Street, logic suggests that Blackacre's owner's direct access easement includes use of Y Street. In the case at bar, Petitioners claim that the closure of Duke Street left them with no reasonable access to the Property. (Pet. ¶ 15; *see also* Tr. 42:12-14.) The burden is on Petitioners to prove that this closure cut off reasonable access, *State Highway Comm'r v. Easley*, 215 Va. 197, 203, 207 S.E.2d 870, 875 (1974), but in their Petition for Declaratory Judgment, Petitioners need not "descend into statements giving details of proof in order to withstand demurrer." *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 24, 431 S.E.2d 277, 279 (1993) (citation omitted). In other words, at this juncture, Petitioners' Duke Street claims cannot be dismissed; Petitioners still must have the opportunity to prove that the closures cut off reasonable access. Respondent's challenges in this regard would be more appropriate in a motion for summary judgment, when the parties have had some opportunity for discovery.

Finally, Respondent argues that the reason Petitioners fail to allege Respondent obstructed vehicular access is because there is no vehicular access to the Property (Br. in Supp. 12) and that property owners have no right to an uninterrupted flow of vehicular traffic along streets abutting or in proximity to their property. (*Id.* 13.) Consideration of the accuracy of these arguments is unnecessary, however, because Petitioners allege that all access, all public access, and all reasonable access to the Property was cut off as a result of Respondent's actions. (Pet. ¶¶ 11, 15, 16.) Whether the referenced access was *pedestrian* or *vehicular* is irrelevant because Respondent's actions, according to Petitioners, cut off access (or reasonable access) itself, a broad allegation that encompasses both pedestrian and vehicular access. Again, Petitioners have the burden to prove that there was no access or no reasonable access, but they are not required to meet that burden at this stage of the proceedings.

## C. *Third Requirement: The "Taking or Damaging" Was for Public Uses*

For a landowner to recover in an inverse condemnation claim, the government or a body with condemnation power must have taken or damaged the relevant private property for public uses, the term "public

uses" being defined by the General Assembly. Va. Const., Art. I, § 11. According to the Virginia Code:

> The term "public uses" mentioned in Article I, Section 11, of the Constitution of Virginia is hereby defined as to embrace only the acquisition of property where: (i) the property is taken for the possession, ownership, occupation, and enjoyment of property by the public or a public corporation; (ii) the property is taken for construction, maintenance, or operation of public facilities by public corporations or by private entities provided that there is a written agreement with a public corporation providing for use of the facility by the public; (iii) the property is taken for the creation or functioning of any public service corporation, public service company, or railroad; (iv) the property is taken for the provision of any authorized utility service by a government utility corporation; (v) the property is taken for the elimination of blight provided that the property itself is a blighted property; or (vi) the property taken is in a redevelopment or conservation area and is abandoned or the acquisition is needed to clear title where one of the owners agrees to such acquisition or the acquisition is by agreement of all the owners.

Va. Code § 1-219.1 (2008).

Petitioners allege that Respondent "closed York Street to accommodate the construction of the Marriott Residence Inn. . . ." (Pet. ¶ 8.) This allegation does not fall within the definition of "public uses" in Article 1, Section 11, of the Constitution of Virginia or § 1-219.1 of the Virginia Code, and therefore, Petitioners fail to allege that the Property was taken or damaged for a public use. Because of this, the Court sustains Respondent's Demurrer with respect to all claims regarding York Street.

On the other hand, Petitioners allege that "[t]he closure of Duke Street was for the purpose of the construction and/or reparation of public utilities." (*Id.*, at ¶ 14.) Section 1-219.1 provides that the term "public uses" includes "the acquisition of property where . . . the property is taken for construction, maintenance, or operation of public facilities by public corporations"; the term "public facilities" includes roads and streets; and the term "public corporations" includes "any incorporated municipality" within the Commonwealth. § 1-219.1. Thus, Petitioners do allege that Duke Street's closure was for public uses, and, consequently, the Court overrules Respondent's Demurrer with respect to Petitioners' Duke Street allegations.

Petitioners contend that they do properly allege York Street's closure was for a public use, arguing that the Supreme Court of Virginia considered Respondent's "not a public use" defense in *Burns v. Board of*

*Supervisors of Fairfax County,* 218 Va. 625, 238 S.E.2d 823 (1977). (Br. in Opp. 4.) In that case, Fairfax County demurred to an inverse condemnation action, claiming that the discharge of water across private property was not a public use. *Burns,* 218 Va. at 627-28, 238 S.E.2d at 825. According to Petitioners, the Supreme Court of Virginia "held that, by virtue of a statute requiring localities to provide for adequate drainage, the General Assembly had expressly declared that drainage is a public purpose and that the use of property for that purpose is a public use." (Br. in Opp. 4 (citing *Burns,* 218 Va. at 628-29, 238 S.E.2d at 826).) *Burns* is analogous to the case at bar, Petitioners argue, because § 15.2-2001 of the Virginia Code "explicitly authorizes the City to . . . improve, maintain, and repair public streets and roads." (*Id.*) Petitioners claim that Respondent acted pursuant to this code section, "taking and damaging the Petitioners' property [for] a public use, the public purpose of improving, maintaining, and repairing York Street." (*Id.*)

Petitioners' argument is unconvincing because it is clearly alleged that Respondent "closed York Street to accommodate the construction of the Marriott Residence Inn . . ." (Pet. ¶ 8), not to improve, maintain, or repair York Street. This is not a "public use" pursuant to either Article 1, Section 11, of the Virginia Constitution or § 1-219.1.

## IV. *Conclusion*

Petitioners allege that Respondent's four-month closure of Duke Street damaged the Property in that the closure, which was for construction or reparation of public facilities, prevented reasonable access to the Property during that time. This meets the requirements for stating an inverse condemnation claim pursuant to Article 1, Section 11 of the Constitution of Virginia. Petitioners' claims with respect to York Street, however, fail to meet the requirements for stating an inverse condemnation cause of action because the Petition for Declaratory Judgment does not contain an allegation that Respondent closed York Street for a public use. In light of these findings, the Court sustains Respondent's Demurrer with respect to Petitioners' assertion that Respondent's actions on York Street constituted an inverse condemnation. The Court overrules the Demurrer to the extent that Petitioners allege Respondent's actions on Duke Street resulted in an inverse condemnation of the Property.